**Steve Roy BRASHER, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 04–03–00202–CR.**

Court of Appeals of Texas,
San Antonio.

May 19, 2004.

Discretionary Review Refused
Oct. 6, 2004.

M. Patrick Maguire, Danford, Emerson & Maguire, P.L.L.C., Kerrville, for appellant.

E. Bruce Curry, Dist. Atty., for appellee.

Sitting: PAUL W. GREEN, Justice, SANDEE BRYAN MARION, Justice, PHYLIS J. SPEEDLIN, Justice.

## OPINION

Opinion by SANDEE BRYAN MARION, Justice.

A jury found defendant, Steve Roy Brasher, guilty of murder and assessed punishment at life in prison. On appeal, defendant asserts he received ineffective assistance of counsel and the trial court erred in denying his motion for mistrial and motion for new trial. We affirm.

## INEFFECTIVE ASSISTANCE OF COUNSEL

In his first issue, defendant asserts he received ineffective assistance of counsel during the punishment phase of trial because his attorney failed to object to testimony regarding extraneous offenses or to request a limiting instruction regarding evidence of the offenses.

During the punishment phase of trial, the State called appellant's father, Mr. William Brasher, to testify about two 1999 incidents in which appellant was charged with the aggravated kidnapping and aggravated assault of his father. By the time of trial, these charges had been dismissed. When the prosecutor asked Mr. Brasher about whether defendant had forced him to drive to a friend's house, Mr. Brasher said there was nothing forceful about the incident and defendant did not threaten him with a gun. The State then used Mr. Brasher's 1999 written statement for impeachment purposes, without objection from defense counsel. The State also elicited testimony from Mr. Brasher about another 1999 incident during which defendant allegedly struck him with a metal chair. Mr. Brasher denied the incident, and again without objection, the State used a 1999 statement for impeachment purposes.

A witness' prior inconsistent statement may be used to impeach the witness' credibility. *See* TEX.R. EVID. 607. A Rule 607 challenge to a witness' credibility may come from any party, including the party calling the witness. *Hughes v. State*, 4 S.W.3d 1, 5 (Tex.Crim.App.1999). However, a party may not use impeachment by prior inconsistent statements as a mere subterfuge to get otherwise inadmissible hearsay evidence before the jury.

*Id.; Pruitt v. State,* 770 S.W.2d 909, 909 (Tex.App.-Fort Worth 1989, pet. ref'd). A party's knowledge that its own witness will testify unfavorably is a factor the trial court must consider when determining whether the evidence is admissible under Rule 403. *Hughes,* 4 S.W.3d at 5; *see also Barley v. State,* 906 S.W.2d 27, 37 n. 11 (Tex.Crim.App.1995). A trial court abuses its discretion under Rule 403 if it allows the State to use impeachment evidence for the primary purpose of placing otherwise inadmissible evidence before the jury. *Hughes,* 4 S.W.3d at 5. "The impeachment evidence must be excluded under Rule 403's balancing test because the State profits from the witness' testimony only if the jury misuses the evidence by considering it for its truth. Consequently, any probative value the impeachment testimony may have is substantially outweighed by its prejudicial effect." *Id.*

■ Defendant contends, without explanation, that evidence of the 1999 extraneous offenses was not otherwise admissible and the State improperly used his father's prior inconsistent statements as a ploy to get the evidence before the jury. Defendant alleges the State knew his father was a hostile witness; therefore, according to defendant, his attorney should have objected to the testimony and requested a limiting instruction. As proof the State knew his father would testify unfavorably, defendant relies on the following statement by the prosecutor during guilt/innocence phase closing arguments:

> His father, bless his heart that he's been put in this position of being a witness, but that's not my fault.... That's not anyone's fault except his son's, the Defendant, and I wouldn't be doing my job if I didn't call him as a witness, because he's got relevant evidence and he's the Defendant's father, so, understandably, I would hate to be in

his position. I can't imagine what it would be like to have to testify against a loved one, so I understand that although not an excuse, you know, you can somewhat understand that he's up here trying to waffle on what he said.

During the guilt/innocence phase of trial, Mr. Brasher testified about the events leading up to the murder. No testimony was elicited about the 1999 incidents. We agree with the State that the above comment was an argument about the evidence and the relationship between Mr. Brasher and defendant. Nothing in the record indicates the State knew Mr. Brasher would testify, during the punishment phase, about previous incidents in a manner inconsistent with his statements given at the time of those incidents. Because we cannot say the trial court abused its discretion in allowing the State to impeach Mr. Brasher, we cannot say defense counsel was ineffective for failing to object to the admission of such testimony. *See Thompson v. State,* 9 S.W.3d 808, 812 (Tex.Crim. App.1999) (to defeat presumption of reasonable professional assistance, any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness).

■ Defendant also complains about counsel's failure to request a limiting instruction. In *Ex parte Varelas,* 45 S.W.3d 627 (Tex.Crim.App.2001), the Court of Criminal Appeals quoted from its prior unpublished opinion from Varelas' conviction, in which the Court considered whether his trial counsel was ineffective:

> In light of the number of ways and the degree to which a defendant can suffer harm from the admission of extraneous offense evidence, we have trouble understanding why trial counsel did not request a burden of proof or limiting instruction regarding these offenses.

However, the bare record does not reveal the nuances of trial strategy. Further, to hold trial counsel's actions (or inaction) ineffective in the instant case would call for speculation and such speculation is beyond the purview of this Court. Rather, because of the strong presumptions that trial counsel's conduct falls within the wide range of reasonable professional assistance and that such conduct might be sound trial strategy, we must conclude, in light of an otherwise silent record, that appellant failed to meet his burden of showing that his trial counsel's assistance was ineffective.

*Id.* at 632 (*quoting Varelas v. State,* No. 72178, slip op. at 8 (Tex.Crim.App. March 4, 1997) (not designated for publication)).

The same reasoning applies here. Although a hearing was held on defendant's motion for new trial, defendant's complaints regarding counsel's failure to object or to request a limiting instruction was not raised and defense counsel was not asked to explain his trial tactics. Because the record is silent as to trial counsel's strategy, defendant has not met his burden of establishing that his counsel's assistance was ineffective.

## MOTION FOR MISTRIAL AND MOTION FOR NEW TRIAL

██ In his second and third issues, defendant asserts the trial court erred in denying his motion for mistrial and motion for new trial on the grounds that the jury foreman, Roy Rodriguez, concealed pertinent information during voir dire questioning. Defendant contends Mr. Rodriguez's former position as a dispatcher at the Bandera County Jail enabled him to acquire knowledge against defendant. Defendant asserts he would have exercised a peremptory strike to remove Mr. Rodriguez from the venire. Defendant also asserts the trial court erred in denying his motion for new trial because another juror knew Mr. Rodriguez worked as a dispatcher and had knowledge of defendant's criminal record.

During voir dire, the venirepanel was asked if anyone knew the defendant, and Mr. Rodriguez responded that he did. Mr. Rodriguez stated he and defendant were acquaintances and, although "not socially close," he may have bought defendant a beer. Mr. Rodriguez said he was currently working as a police office for the Department of Veterans Affairs and he had several close relatives in law enforcement. Mr. Rodriguez was subsequently selected for the jury and elected jury foreman. After the jury returned a guilty verdict, defendant recognized, for the first time, that Mr. Rodriguez had been a dispatcher at the jail in which defendant was confined following the 1999 assault of his father. Before the punishment phase of trial began, defendant moved for a mistrial, which was denied.

██ We review a trial court's ruling on a motion for mistrial and on a motion for new trial under an abuse of discretion standard. *See Ladd v. State,* 3 S.W.3d 547, 567 (Tex.Crim.App.1999) (mistrial); *Lewis v. State,* 911 S.W.2d 1, 7 (Tex.Crim. App.1995) (new trial). With respect to oral questions asked during voir dire, error occurs where a prejudiced or biased juror is selected without fault or lack of diligence on the part of defense counsel. *Gonzales v. State,* 3 S.W.3d 915, 916–17 (Tex.Crim.App.1999). Thus, counsel must be diligent in eliciting pertinent information from prospective jurors during voir dire in an effort to uncover potential prejudice or bias. *Id.* at 917. Defense counsel has an obligation to ask questions calculated to bring out information that might indicate a juror's inability to be impartial

and truthful. *Armstrong v. State*, 897 S.W.2d 361, 363–64 (Tex.Crim.App.1995). If defense counsel fails to ask such questions, then the purportedly material information a juror fails to disclose is not really "withheld" so as to constitute misconduct warranting a reversal. *Id.* at 364. Counsel must ask specific questions, not rely on broad ones, to satisfy this obligation, and must ask follow-up questions after uncovering potential bias. *Gonzales*, 3 S.W.3d at 917. There is no error where counsel has not met this obligation. *Id.*

Here, during voir dire Mr. Rodriguez admitted he knew defendant and he did not conceal his employment as a law enforcement officer. No further questions were asked about Mr. Rodriguez's law enforcement background or experience. Nothing in the record indicates Mr. Rodriguez would have withheld information about his former employment as a dispatcher had counsel met his obligation to ask specific follow-up questions about Mr. Rodriguez's employment. Accordingly, the trial court did not abuse its discretion in denying defendant's motion for mistrial or new trial on the grounds that Mr. Rodriguez committed misconduct by withholding information.

■ Defendant also complains of juror misconduct on the grounds that at least one other juror knew Mr. Rodriguez was a former dispatcher and had knowledge of defendant's past criminal record. At the new trial hearing, juror Joseph Russell said he knew Mr. Rodriguez was acquainted with defendant and that Mr. Rodriguez knew about defendant's record. However, Mr. Russell could not remember when he knew this, how he knew this, and in fact, he thought Mr. Rodriguez's knowledge of defendant resulted from defendant and Mr. Rodriguez living in the same neighborhood. Nine other jurors also testified at the new trial hearing, and all stated that

no one discussed knowing the defendant during deliberations. Several of the jurors, including Mr. Russell, said they learned Mr. Rodriguez had been a dispatcher when they were served with a subpoena to appear at the new trial hearing.

■ The trial court is the sole judge of the credibility of the testifying jurors. *Lewis*, 911 S.W.2d at 7. "Where there is conflicting evidence on an issue of fact as to jury misconduct, the trial judge determines the issue and there is no abuse of discretion in overruling the motion for new trial." *Thomas v. State*, 699 S.W.2d 845, 854 (Tex.Crim.App.1985). On this record, we find no abuse of discretion.

## CONCLUSION

We overrule defendant's issues on appeal and affirm the trial court's judgment.