02-10-040-CR















 

 

 

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

 

NO. 02-10-00040-CR

 

 


 
 
 Todd Allen Bancroft
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE 
 
 


 

 

------------

 

FROM THE 396th District Court
OF Tarrant COUNTY

------------

MEMORANDUM
OPINION[1]

------------

          In one issue, appellant Todd Allen
Bancroft appeals his conviction for assault causing bodily injury to a family
or household member.[2]
 We will affirm.

          The facts of this case are not in
dispute.  The issue in this case relates
to the trial court’s denial of Bancroft’s request for a recess during voir dire.  After the
State completed its voir dire, the following exchange
between Bancroft’s attorney and the trial court took place:

[Defense Counsel]:  Judge, I’ve spoken with the prosecutor and
certainly I don’t think this was malicious on anybody’s parts, certainly not
the State’s part.  But she has told me
and I heard during the Court’s voir dire that the
jury questionnaires were made available yesterday evening.  The Defense was never made aware that the questionnaires
were available, so we didn’t know that they were available.

 

The State had all night to --
had the evening to review the questionnaires prior to the voir
dire examination of the jury and the Defense [did] not.  This, obviously, puts the State at a significant
advantage.

 

Had we been notified that
we -- that the questionnaires were available, certainly we would have availed
ourselves of the opportunity to review those prior to voir
dire examination of the jury.  We would
ask that the Court -- the place that we’re at right now is both the Court and
the State have conducted their voir dire examination
of the jury.  Prior to our voir dire examination of the jury, we would ask for a
recess until 2:00 o’clock so that we can sufficiently review and examine the
questionnaires.

 

We first got access to the
questionnaires when I arrived in court this morning at just after 8:30.  Again, I’m not saying this was a malicious
act on anybody’s part, but we were not aware that they were available, did not
have the opportunity to review those questionnaires as the State did.  We believe that this deprives [Bancroft] of a
fair trial under the state and federal constitutions as it puts the State at a
significant advantage.  And we would ask
for recess until 2:00 o’clock to review the questionnaires.

 

[The Court]:  Well, you knew that we would get a jury out
of Monday’s panel to come back Tuesday morning.

 

[Defense Counsel]:  I was not aware of that.

 

[The Court]:  Counsel, we had discussions of that weeks
before talking about when we would try this case.

 

[Defense Counsel]:  We had talked about -- my recollection of it,
Judge, is that -- that we would arraign [Bancroft] last week on Tuesday and
that we were then recessed until this morning for jury selection.  There was no -- I don’t recall any discussion
of when -- what pool the panel would be pulled out of.

 

[The Court]:  Did we not have discussions yesterday
regarding [Bancroft’s] mental condition that I said, okay, we’re going to have
to cancel the jury if he’s incompetent?

 

[Defense Counsel]:  Well, we did have discussions about his -- 

 

[The Court]:  Did you think at 9:00 o’clock this morning
that I was going to get a panel from this morning and have them come up?

 

[Defense Counsel]:  Yes.

 

[The Court]:  And so you’re thinking that at 9:00 o’clock
this morning when the jurors report to the jury room at 8:00 o’clock, they
would have had -- they would have had -- filled out their questionnaires and I
would have made copies and would have distributed those to you blind?

 

[Defense Counsel]:  Well, in any event, Judge --

 

[The Court]:  No, answer my question.

 

[Defense Counsel]:  Yes.

 

[The Court]:  Okay. 
How many cases have you tried?

 

[Defense Counsel]:  I’ve tried -- I don’t know the exact number.

 

[The Court]:  Have you ever had a felony court do that to
you?

 

[Defense Counsel]:  I’ve had felony courts where we pulled jury
panels out of that day’s jury pool.

 

[The Court]:  And in that situation the judge has always
given you the opportunity to review the questionnaires before they seat the
panel.

 

[Defense Counsel]:  Yes, Judge.

 

[The Court]:  So you came to court this morning thinking,
here we go, I mean, they’re here at 9:00 o’clock, we’re starting and I don’t
get the questionnaires?

 

[Defense Counsel]:  Well, I received the questionnaires when I
got here this morning and I reviewed them to the --

 

[The Court]:  Well, what I’m trying to say is, those
questionnaires were made available yesterday, and that’s all I’m going to
say.  They were available yesterday.  Your motion is denied.

 

No further
objections were raised by either defense counsel or the State during voir dire.  A jury
was empanelled and ultimately found Bancroft guilty of assault causing bodily
injury to a family or household member. 
The trial court sentenced Bancroft to twenty-five years’
incarceration.  This appeal followed.

          In his sole issue, Bancroft argues that he was denied his
rights to a fair trial under both the state and federal constitutions and his
right to effective assistance of counsel.  See U.S. Const. amend.
V, VI, XIV; Tex. Const. art. I, §§ 10,
19.  Bancroft’s arguments are
predicated on the notion that because the State reviewed the written juror
questionnaires the night before trial, he should have been given “a fair amount
of time to review the [questionnaires] before conducting voir
dire.”  This court interprets Bancroft’s
issue as having three distinct parts.  First,
it seems that Bancroft is arguing that, in violation of his due process rights
to a fair trial, the procedure employed by the trial court allowed the State
more time than he to examine the voir dire
questionnaires.  Second, Bancroft argues
that the trial court erred by not allowing him more time to examine the
questionnaires the morning of voir dire.  Finally, Bancroft argues that his not being
allowed to examine the questionnaires further before voir
dire was tantamount to ineffective assistance of counsel.  We disagree.

          A criminal defendant has a
constitutional right to trial by an impartial jury.  To be sure, voir
dire plays a critical function in assuring the criminal defendant that his
constitutional right to an impartial jury will be honored.  Morgan v. Illinois,
504 U.S. 719, 729, 112 S. Ct. 2222, 2230 (1992). “[P]art of the
guarantee of a defendant’s right to an impartial jury is an adequate voir dire to identify unqualified
jurors.”  Id.  Thus, counsel must be
diligent in eliciting pertinent information from prospective jurors during voir dire in an effort to uncover potential prejudice or
bias, and counsel has an obligation to ask questions calculated to bring out
information that might indicate a juror’s inability to be impartial.  Brasher v. State,
139 S.W.3d 369, 373 (Tex. App.—San Antonio 2004, pet. ref’d).  To this end, defense counsel should not rely
on written questionnaires to supply any information that counsel deems
material.  See
Gonzales v. State, 3 S.W.3d 915, 917 (Tex. Crim. App. 1999) (“[W]ritten questions are by nature vulnerable to
misinterpretation.”).

          Furthermore, a trial court has broad
discretion over the process of selecting a jury.  Barajas v. State, 93 S.W.3d 36, 38
(Tex. Crim. App. 2002); Allridge v. State,
762 S.W.2d 146, 167 (Tex. Crim. App. 1988), cert.
denied, 489 U.S. 1040 (1989). 
Without this discretion, voir dire could go on
forever without reasonable limits.  Faulder v. State, 745 S.W.2d 327, 334 (Tex.
Crim. App. 1987), cert. denied, 519
U.S. 995 (1996).  We review a trial court’s
denial of a motion for continuance for an abuse of discretion.  Janecka v. State,
937 S.W.2d 456, 468 (Tex. Crim. App. 1996), cert.
denied, 522 U.S. 525 (1997).  When an
appellant contends that the denial of continuance rendered him unable to
adequately prepare for trial, appellant must establish specific prejudice to
his cause arising from the court’s ruling. 
Heiselbetz v. State, 906 S.W.2d 500, 511–12 (Tex. Crim. App. 1995).  The bare assertion that counsel did not have
adequate time to conduct pre-trial activities, absent a showing of specific and
serious harm to the defense, is insufficient to establish abuse of
discretion.  Id.

          We first address Bancroft’s argument
that his rights to a fair trial were violated when the State was allegedly given
more time to review the questionnaires. 
There is simply no evidence in the record, other than Bancroft’s bare
assertion, that the trial court allowed the State to review questionnaires the
night before trial but not Bancroft. 
Bancroft made no offer of proof or otherwise put on any evidence that his
not picking up and reviewing the questionnaires the night before, as the State
did, was anything other than inadvertence on his part.  We hold that the record does not support that
the State had any unfair advantage or that the trial court’s process allowed an
unfair advantage to the State.  See Burruss v.
State, 20 S.W.3d 179, 186 (Tex. App.—Texarkana 2000, pet. ref’d) (reasoning
that there was no merit to appellant’s contention that trial court’s process
for jury voir dire violated defendant’s
constitutional right to a fair and impartial trial).

          Furthermore, there is no showing in
the record, nor does Bancroft allege, how counsel would have conducted voir dire any differently. 
There is no showing that counsel was denied the ability to intelligently
and effectively exercise his peremptory challenges.  Also, the duty was defense counsel’s alone to
question jurors adequately and not rely on the written questionnaires.  See Gonzales, 3
S.W.3d 915, 917.  In short,
Bancroft has failed to establish any specific prejudice to his case arising
from the court’s denial of his request for a continuance.  See Heiselbetz,
906 S.W.2d at 511–12.

          Finally, Bancroft also couches his
argument in terms of an ineffective assistance of counsel claim.  See Strickland v. Washington, 466 U.S.
668, 686, 104 S. Ct. 2052, 2064 (1984). 
To the extent that Bancroft brings an ineffective assistance of counsel
claim, we conclude that this argument fails also because Bancroft has failed to
demonstrate prejudice to his case by the trial court’s denial of his request
for additional time.[3]  See Conrad v. State, 77 S.W.3d
424, 426–27 (Tex. App.—Fort Worth 2002, pet. ref’d) (holding that appellant
failed to show prejudice; thus, his claim of ineffective assistance of counsel
failed under Strickland).  We hold
that the trial court did not err by denying Bancroft’s request for additional
time to review the juror questionnaires and that Bancroft has failed to
demonstrate that his defense was prejudiced by the trial court’s ruling.  Having rejected all of Bancroft’s arguments,
we overrule his sole issue and affirm the trial court’s judgment.

 

BILL MEIER
JUSTICE

 

PANEL:  GARDNER, WALKER, and
MEIER, JJ.

 

WALKER,
J. filed a dissenting opinion.

 

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:  January 20, 2011


 










 

 

 

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

 

NO. 02-10-00040-CR

 

 


 
 
 Todd Allen Bancroft
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE 
 
 


 

 

----------

 

FROM THE 396th District Court
OF Tarrant COUNTY

----------

 

DISSENTING
MEMORANDUM OPINION[4]

----------

 

          The majority holds that “the record
does not support that the State had any unfair advantage or that the trial
court’s process allowed an unfair advantage to the State.”  Because I cannot agree, I respectfully
dissent.

The
purposes of voir dire are (1) to develop rapport
between the officers of the court and the jurors, (2) to expose juror bias or
interest warranting a challenge for cause, and (3) to elicit information
necessary to intelligently use peremptory challenges.  Dhillon v. State, 138 S.W.3d 583, 587–88 (Tex. App.––Houston
[14th Dist.] 2004, pet. stricken); S.D.G.
v. State, 936 S.W.2d 371, 380 (Tex. App.––Houston [14th Dist.] 1996, writ
denied).  A trial court may impose
reasonable restrictions on voir dire examination,
including reasonable limits on the amount of time each party can question the
jury panel.  Caldwell v. State, 818 S.W.2d 790, 793 (Tex. Crim. App. 1991), cert. denied, 503 U.S. 990 (1992), overruled on other grounds by Castillo v. State, 913 S.W.2d 529 (Tex. Crim.
App. 1995); Ratliff v. State, 690
S.W.2d 597, 597 (Tex. Crim. App. 1985).  The
discretion of the trial court regarding control of voir
dire is not limitless, however; thus, the benefits achieved by accelerating the
often lengthy voir dire process “must never be
attained at the risk of denying to a party on trial a substantial right.”  Caldwell, 818 S.W.2d at 793; Smith
v. State, 703 S.W.2d 641, 645 (Tex. Crim. App. 1985).  Although time constraints on voir dire are a legitimate concern of a trial court, the
paramount concern in a case must be the appellant’s freedom to intelligently
exercise his peremptory challenges.  Smith, 703 S.W.2d at
645.

The Sixth
Amendment guarantees the right to a trial before an impartial jury.  Franklin v. State, 138 S.W.3d 351, 354 (Tex. Crim. App. 2004).  The constitutional guarantee of the right to
an impartial jury includes adequate voir dire to
identify unqualified jurors.  Id. 
Essential to the Sixth Amendment guarantee of trial before an impartial
jury is the right to question venire members in order to intelligently exercise
peremptory challenges and challenges for cause. 
Id.

Here, the
trial court and the State concluded their portions of voir
dire at 10:40 a.m. on January 26, 2010. 
The trial court gave the jury a twenty-minute break, instructing them to
return at 11:00 a.m.  Appellant Todd
Allen Bancroft’s counsel then informed the trial court that he had not been
notified that the juror questionnaires had been made available the night
before, that the State had obtained its copies of the questionnaires the night
before, and that he had been given his copies only that morning when he entered
the courtroom; he requested a brief recess until 2:00 p.m. to review the juror
questionnaires.[5]  Bancroft’s counsel specifically informed the
trial court that he had not had an adequate time to review the questionnaires
because he did not know and was not informed that they were available the
previous night, that the State had all evening to review them, that he was
placed at a disadvantage, and that “this deprives [Bancroft] of a fair trial
under the state and federal constitutions as it puts the State at a significant
advantage.”  The trial court denied
Bancroft’s request for a three-hour recess or for a two-hour recess if an
hour-long lunch break was excluded.  The
case took less than a day to try; the jury returned at 9:00 a.m. on January 27,
2010 for closing arguments and returned a verdict at 10:40 a.m. that morning.

Because
the State obtained the juror questionnaires on January 25, 2010 and because
Bancroft was not told or advised that he also could obtain them on January 25,
2010, the State possessed and had time to assimilate information about the jury
panel that Bancroft did not.  Bancroft
did not possess the information until 8:30 a.m. on January 26, 2010.  So the State had the juror information at
least fifteen and a half hours before Bancroft did (assuming the State picked
up the juror questionnaires at the latest possible moment, at 5 p.m. on January
25).[6]  The State’s possession of juror information
that was not possessed by Bancroft and the trial court’s denial of Bancroft’s
request for a brief recess in voir dire in order to
review the questionnaires constitute a due process violation; the State
possessed an unfair advantage in voir dire.  See,
e.g., Grijalva v. State, 614 S.W.2d 420, 424 (Tex. Crim. App. 1980) (holding, in
death penalty case, that State was given unfair advantage in the jury selection
process when the trial court allowed it to exercise peremptory strikes after
entire panel was questioned); Giron v. State, 19
S.W.3d 572, 576 (Tex. App.—Beaumont 2000, pet. ref’d) (“In an adversarial
system due process requires at least a reasonably level playing field at
trial.”).

I would
hold that Bancroft was denied due process by not being afforded the same
opportunity to review the jury questionnaires as the State.  Because I am unable to determine beyond a
reasonable doubt that this constitutional error did not contribute to
Bancroft’s conviction or punishment, I respectfully dissent.  See Tex.
R. App. P. 44.2(a); see also Williams v. State, 958 S.W.2d 186,
194 (Tex. Crim. App. 1997) (finding constitutional error was harmful when error
caused State to be more prepared for cross-examination than it would have
without the error).

 

SUE WALKER
JUSTICE



DO NOT PUBLISH

Tex. R. App. P. 47.2(b

 

DELIVERED:  January 20, 2011











[1]See Tex. R. App. P. 47.4.





[2]See Tex. Penal Code Ann. § 22.01(b)(2) (Vernon Supp. 2010).





[3]Bancroft
concedes that the Strickland test was
not met and that “[t]rial [c]ounsel
was certainly not ineffective.”  Bancroft
seems to argue that the trial court’s ruling prevented him from having adequate
time to prepare for trial.





[4]See Tex. R. App. P. 47.4.





[5]The entire
dialogue between Bancroft’s counsel and the trial court is set forth in the
majority’s opinion, so I do not repeat it here.





[6]The District
Attorney’s office is located in the same building as the trial court.