

# COURT OF APPEALS
**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

**NO. 02-10-00040-CR**

TODD ALLEN BANCROFT                                                        APPELLANT

V.

THE STATE OF TEXAS                                                              STATE

------------

FROM THE 396TH DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

In one issue, appellant Todd Allen Bancroft appeals his conviction for assault causing bodily injury to a family or household member.[2] We will affirm.

The facts of this case are not in dispute. The issue in this case relates to the trial court's denial of Bancroft's request for a recess during voir dire. After the

---

[1]*See* Tex. R. App. P. 47.4.

[2]*See* Tex. Penal Code Ann. § 22.01(b)(2) (Vernon Supp. 2010).

State completed its voir dire, the following exchange between Bancroft's attorney and the trial court took place:

> [Defense Counsel]: Judge, I've spoken with the prosecutor and certainly I don't think this was malicious on anybody's parts, certainly not the State's part. But she has told me and I heard during the Court's voir dire that the jury questionnaires were made available yesterday evening. The Defense was never made aware that the questionnaires were available, so we didn't know that they were available.
>
> The State had all night to -- had the evening to review the questionnaires prior to the voir dire examination of the jury and the Defense [did] not. This, obviously, puts the State at a significant advantage.
>
> Had we been notified that we -- that the questionnaires were available, certainly we would have availed ourselves of the opportunity to review those prior to voir dire examination of the jury. We would ask that the Court -- the place that we're at right now is both the Court and the State have conducted their voir dire examination of the jury. Prior to our voir dire examination of the jury, we would ask for a recess until 2:00 o'clock so that we can sufficiently review and examine the questionnaires.
>
> We first got access to the questionnaires when I arrived in court this morning at just after 8:30. Again, I'm not saying this was a malicious act on anybody's part, but we were not aware that they were available, did not have the opportunity to review those questionnaires as the State did. We believe that this deprives [Bancroft] of a fair trial under the state and federal constitutions as it puts the State at a significant advantage. And we would ask for recess until 2:00 o'clock to review the questionnaires.
>
> [The Court]: Well, you knew that we would get a jury out of Monday's panel to come back Tuesday morning.
>
> [Defense Counsel]: I was not aware of that.
>
> [The Court]: Counsel, we had discussions of that weeks before talking about when we would try this case.

2

[Defense Counsel]: We had talked about -- my recollection of it, Judge, is that -- that we would arraign [Bancroft] last week on Tuesday and that we were then recessed until this morning for jury selection. There was no -- I don't recall any discussion of when -- what pool the panel would be pulled out of.

[The Court]: Did we not have discussions yesterday regarding [Bancroft's] mental condition that I said, okay, we're going to have to cancel the jury if he's incompetent?

[Defense Counsel]: Well, we did have discussions about his --

[The Court]: Did you think at 9:00 o'clock this morning that I was going to get a panel from this morning and have them come up?

[Defense Counsel]: Yes.

[The Court]: And so you're thinking that at 9:00 o'clock this morning when the jurors report to the jury room at 8:00 o'clock, they would have had -- they would have had -- filled out their questionnaires and I would have made copies and would have distributed those to you blind?

[Defense Counsel]: Well, in any event, Judge --

[The Court]: No, answer my question.

[Defense Counsel]: Yes.

[The Court]: Okay. How many cases have you tried?

[Defense Counsel]: I've tried -- I don't know the exact number.

[The Court]: Have you ever had a felony court do that to you?

[Defense Counsel]: I've had felony courts where we pulled jury panels out of that day's jury pool.

[The Court]: And in that situation the judge has always given you the opportunity to review the questionnaires before they seat the panel.

[Defense Counsel]: Yes, Judge.

3

[The Court]: So you came to court this morning thinking, here we go, I mean, they're here at 9:00 o'clock, we're starting and I don't get the questionnaires?

[Defense Counsel]: Well, I received the questionnaires when I got here this morning and I reviewed them to the --

[The Court]: Well, what I'm trying to say is, those questionnaires were made available yesterday, and that's all I'm going to say. They were available yesterday. Your motion is denied.

No further objections were raised by either defense counsel or the State during voir dire. A jury was empanelled and ultimately found Bancroft guilty of assault causing bodily injury to a family or household member. The trial court sentenced Bancroft to twenty-five years' incarceration. This appeal followed.

In his sole issue, Bancroft argues that he was denied his rights to a fair trial under both the state and federal constitutions and his right to effective assistance of counsel. *See* U.S. Const. amend. V, VI, XIV; Tex. Const. art. I, §§ 10, 19. Bancroft's arguments are predicated on the notion that because the State reviewed the written juror questionnaires the night before trial, he should have been given "a fair amount of time to review the [questionnaires] before conducting voir dire." This court interprets Bancroft's issue as having three distinct parts. First, it seems that Bancroft is arguing that, in violation of his due process rights to a fair trial, the procedure employed by the trial court allowed the State more time than he to examine the voir dire questionnaires. Second, Bancroft argues that the trial court erred by not allowing him more time to examine the questionnaires the morning of voir dire. Finally, Bancroft argues

4

that his not being allowed to examine the questionnaires further before voir dire was tantamount to ineffective assistance of counsel. We disagree.

A criminal defendant has a constitutional right to trial by an impartial jury. To be sure, voir dire plays a critical function in assuring the criminal defendant that his constitutional right to an impartial jury will be honored. *Morgan v. Illinois*, 504 U.S. 719, 729, 112 S. Ct. 2222, 2230 (1992). "[P]art of the guarantee of a defendant's right to an impartial jury is an adequate *voir dire* to identify unqualified jurors." *Id.* Thus, counsel must be diligent in eliciting pertinent information from prospective jurors during voir dire in an effort to uncover potential prejudice or bias, and counsel has an obligation to ask questions calculated to bring out information that might indicate a juror's inability to be impartial. *Brasher v. State*, 139 S.W.3d 369, 373 (Tex. App.—San Antonio 2004, pet. ref'd). To this end, defense counsel should not rely on written questionnaires to supply any information that counsel deems material. *See Gonzales v. State*, 3 S.W.3d 915, 917 (Tex. Crim. App. 1999) ("[W]ritten questions are by nature vulnerable to misinterpretation.").

Furthermore, a trial court has broad discretion over the process of selecting a jury. *Barajas v. State*, 93 S.W.3d 36, 38 (Tex. Crim. App. 2002); *Allridge v. State*, 762 S.W.2d 146, 167 (Tex. Crim. App. 1988), *cert. denied*, 489 U.S. 1040 (1989). Without this discretion, voir dire could go on forever without reasonable limits. *Faulder v. State*, 745 S.W.2d 327, 334 (Tex. Crim. App. 1987), *cert. denied*, 519 U.S. 995 (1996). We review a trial court's denial of a

5

motion for continuance for an abuse of discretion. *Janecka v. State*, 937 S.W.2d 456, 468 (Tex. Crim. App. 1996), *cert. denied*, 522 U.S. 525 (1997). When an appellant contends that the denial of continuance rendered him unable to adequately prepare for trial, appellant must establish specific prejudice to his cause arising from the court's ruling. *Heiselbetz v. State*, 906 S.W.2d 500, 511–12 (Tex. Crim. App. 1995). The bare assertion that counsel did not have adequate time to conduct pre-trial activities, absent a showing of specific and serious harm to the defense, is insufficient to establish abuse of discretion. *Id.*

We first address Bancroft's argument that his rights to a fair trial were violated when the State was allegedly given more time to review the questionnaires. There is simply no evidence in the record, other than Bancroft's bare assertion, that the trial court allowed the State to review questionnaires the night before trial but not Bancroft. Bancroft made no offer of proof or otherwise put on any evidence that his not picking up and reviewing the questionnaires the night before, as the State did, was anything other than inadvertence on his part. We hold that the record does not support that the State had any unfair advantage or that the trial court's process allowed an unfair advantage to the State. *See Burruss v. State*, 20 S.W.3d 179, 186 (Tex. App.—Texarkana 2000, pet. ref'd) (reasoning that there was no merit to appellant's contention that trial court's process for jury voir dire violated defendant's constitutional right to a fair and impartial trial).

Furthermore, there is no showing in the record, nor does Bancroft allege, how counsel would have conducted voir dire any differently. There is no showing that counsel was denied the ability to intelligently and effectively exercise his peremptory challenges. Also, the duty was defense counsel's alone to question jurors adequately and not rely on the written questionnaires. *See Gonzales*, 3 S.W.3d 915, 917. In short, Bancroft has failed to establish any specific prejudice to his case arising from the court's denial of his request for a continuance. *See Heiselbetz*, 906 S.W.2d at 511–12.

Finally, Bancroft also couches his argument in terms of an ineffective assistance of counsel claim. *See Strickland v. Washington*, 466 U.S. 668, 686, 104 S. Ct. 2052, 2064 (1984). To the extent that Bancroft brings an ineffective assistance of counsel claim, we conclude that this argument fails also because Bancroft has failed to demonstrate prejudice to his case by the trial court's denial of his request for additional time.[3] *See Conrad v. State*, 77 S.W.3d 424, 426–27 (Tex. App.—Fort Worth 2002, pet. ref'd) (holding that appellant failed to show prejudice; thus, his claim of ineffective assistance of counsel failed under *Strickland*). We hold that the trial court did not err by denying Bancroft's request for additional time to review the juror questionnaires and that Bancroft has failed to demonstrate that his defense was prejudiced by the trial court's ruling. Having

---

[3]Bancroft concedes that the *Strickland* test was not met and that "[t]rial [c]ounsel was certainly not ineffective." Bancroft seems to argue that the trial court's ruling prevented him from having adequate time to prepare for trial.

rejected all of Bancroft's arguments, we overrule his sole issue and affirm the trial court's judgment.

BILL MEIER
JUSTICE

PANEL: GARDNER, WALKER, and MEIER, JJ.

WALKER, J. filed a dissenting opinion.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: January 20, 2011



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-10-00040-CR

---

TODD ALLEN BANCROFT                                              APPELLANT

V.

THE STATE OF TEXAS                                                    STATE

----------

FROM THE 396TH DISTRICT COURT OF TARRANT COUNTY

----------

### DISSENTING MEMORANDUM OPINION[4]

----------

The majority holds that "the record does not support that the State had any unfair advantage or that the trial court's process allowed an unfair advantage to the State." Because I cannot agree, I respectfully dissent.

The purposes of voir dire are (1) to develop rapport between the officers of the court and the jurors, (2) to expose juror bias or interest warranting a challenge for cause, and (3) to elicit information necessary to intelligently use

---

[4]*See* Tex. R. App. P. 47.4.

peremptory challenges. *Dhillon v. State*, 138 S.W.3d 583, 587–88 (Tex. App.—Houston [14th Dist.] 2004, pet. stricken); *S.D.G. v. State*, 936 S.W.2d 371, 380 (Tex. App.—Houston [14th Dist.] 1996, writ denied). A trial court may impose reasonable restrictions on voir dire examination, including reasonable limits on the amount of time each party can question the jury panel. *Caldwell v. State*, 818 S.W.2d 790, 793 (Tex. Crim. App. 1991), *cert. denied*, 503 U.S. 990 (1992), *overruled on other grounds by Castillo v. State*, 913 S.W.2d 529 (Tex. Crim. App. 1995); *Ratliff v. State*, 690 S.W.2d 597, 597 (Tex. Crim. App. 1985). The discretion of the trial court regarding control of voir dire is not limitless, however; thus, the benefits achieved by accelerating the often lengthy voir dire process "must never be attained at the risk of denying to a party on trial a substantial right." *Caldwell*, 818 S.W.2d at 793; *Smith v. State*, 703 S.W.2d 641, 645 (Tex. Crim. App. 1985). Although time constraints on voir dire are a legitimate concern of a trial court, the paramount concern in a case must be the appellant's freedom to intelligently exercise his peremptory challenges. *Smith*, 703 S.W.2d at 645.

The Sixth Amendment guarantees the right to a trial before an impartial jury. *Franklin v. State*, 138 S.W.3d 351, 354 (Tex. Crim. App. 2004). The constitutional guarantee of the right to an impartial jury includes adequate voir dire to identify unqualified jurors. *Id*. Essential to the Sixth Amendment guarantee of trial before an impartial jury is the right to question venire members in order to intelligently exercise peremptory challenges and challenges for cause. *Id*.

Here, the trial court and the State concluded their portions of voir dire at 10:40 a.m. on January 26, 2010.  The trial court gave the jury a twenty-minute break, instructing them to return at 11:00 a.m.  Appellant Todd Allen Bancroft's counsel then informed the trial court that he had not been notified that the juror questionnaires had been made available the night before, that the State had obtained its copies of the questionnaires the night before, and that he had been given his copies only that morning when he entered the courtroom; he requested a brief recess until 2:00 p.m. to review the juror questionnaires.[5]  Bancroft's counsel specifically informed the trial court that he had not had an adequate time to review the questionnaires because he did not know and was not informed that they were available the previous night, that the State had all evening to review them, that he was placed at a disadvantage, and that "this deprives [Bancroft] of a fair trial under the state and federal constitutions as it puts the State at a significant advantage."  The trial court denied Bancroft's request for a three-hour recess or for a two-hour recess if an hour-long lunch break was excluded.  The case took less than a day to try; the jury returned at 9:00 a.m. on January 27, 2010 for closing arguments and returned a verdict at 10:40 a.m. that morning.

Because the State obtained the juror questionnaires on January 25, 2010 and because Bancroft was not told or advised that he also could obtain them on January 25, 2010, the State possessed and had time to assimilate information

_____

[5]The entire dialogue between Bancroft's counsel and the trial court is set forth in the majority's opinion, so I do not repeat it here.

3

about the jury panel that Bancroft did not.   Bancroft did not possess the information until 8:30 a.m. on January 26, 2010.   So the State had the juror information at least fifteen and a half hours before Bancroft did (assuming the State picked up the juror questionnaires at the latest possible moment, at 5 p.m. on January 25).[6]   The State's possession of juror information that was not possessed by Bancroft and the trial court's denial of Bancroft's request for a brief recess in voir dire in order to review the questionnaires constitute a due process violation; the State possessed an unfair advantage in voir dire.   *See*, *e.g.*, *Grijalva v. State*, 614 S.W.2d 420, 424 (Tex. Crim. App. 1980) (holding, in death penalty case, that State was given unfair advantage in the jury selection process when the trial court allowed it to exercise peremptory strikes after entire panel was questioned); *Giron v. State*, 19 S.W.3d 572, 576 (Tex. App.—Beaumont 2000, pet. ref'd) ("In an adversarial system due process requires at least a reasonably level playing field at trial.").

I would hold that Bancroft was denied due process by not being afforded the same opportunity to review the jury questionnaires as the State.   Because I am unable to determine beyond a reasonable doubt that this constitutional error did not contribute to Bancroft's conviction or punishment, I respectfully dissent. *See* Tex. R. App. P. 44.2(a); *see also Williams v. State*, 958 S.W.2d 186, 194 (Tex. Crim. App. 1997) (finding constitutional error was harmful when error

---

[6]The District Attorney's office is located in the same building as the trial court.

caused State to be more prepared for cross-examination than it would have without the error).

SUE WALKER
JUSTICE

DO NOT PUBLISH
Tex. R. App. P. 47.2(b

DELIVERED: January 20, 2011