

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-19-00576-CR

George Oscar **PENA**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 227th Judicial District Court, Bexar County, Texas
Trial Court No. 2018CR6904
Honorable Kevin M. O'Connell, Judge Presiding

Opinion by:     Beth Watkins, Justice

Sitting:        Sandee Bryan Marion, Chief Justice
                Luz Elena D. Chapa, Justice
                Beth Watkins, Justice

Delivered and Filed: September 23, 2020

AFFIRMED

A jury convicted appellant George Oscar Pena for the murder of Juan Romero Martinez and assessed punishment at ninety-nine years' confinement. On appeal, Pena asserts the trial court erred in denying his request for a sudden passion jury instruction and motion for new trial. We affirm the trial court's judgment.

## BACKGROUND

San Antonio Police Officer Walter Thompson received a police dispatch to investigate Pena as a murder suspect. When Officer Thompson arrived at Pena's house, Pena came out with

his hands in the air, and Officer Thompson secured Pena and called the homicide unit. Police officers found a body—later, identified as Martinez—wrapped in a bag in a barrel in the backyard. An autopsy revealed seven gun shots and thirteen sharp-force injuries, the totality of which caused Martinez's death.

The State charged Pena with felony murder, and Pena pleaded not guilty. At trial, the jury heard testimony from the officers who investigated the scene, the Bexar County forensic pathologist who performed Martinez's autopsy, Martinez's family, and Pena. The jury found Pena guilty, and during the charge conference of the punishment phase of trial, Pena requested self-defense and sudden passion jury instructions. The court granted Pena's self-defense request, but denied the sudden passion request, and the jury assessed a ninety-nine-year sentence.

After sentencing, Pena filed a motion for new trial alleging juror misconduct. The court held a hearing on Pena's motion and heard testimony from the majority of the jurors. After the court denied Pena's motion, Pena appealed.

## ANALYSIS

### Sudden Passion Jury Instruction

Pena first argues the trial court erred in refusing his request for a sudden passion jury instruction. According to Pena, the evidence shows he killed Martinez under the immediate influence of sudden passion. We disagree.

### Standard of Review

We review a trial court's decision not to include an instruction on a defensive issue in the charge for an abuse of discretion, and we view the evidence in the light most favorable to the defendant's requested submission. *Bufkin v. State*, 207 S.W.3d 779, 782 (Tex. Crim. App. 2006); *Wesbrook v. State*, 29 S.W.3d 103, 122 (Tex. Crim. App. 2000). A defendant is entitled to an

instruction on any defense supported by the evidence, even if the evidence is weak, contradicted, or lacks credibility. *Gamino v. State*, 537 S.W.3d 507, 510 (Tex. Crim. App. 2017).

*Applicable Law*

During the punishment phase of a murder trial, a defendant may raise the issue of whether he caused someone's death "under the immediate influence of sudden passion arising from an adequate cause." TEX. PENAL CODE ANN. § 19.02(d). "Sudden passion" is "passion directly caused by and arising out of provocation by the individual killed," and it arises at the time of the murder and is not solely the result of former provocation. *Id*. § 19.02(a)(2). "Adequate cause" is "cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection." *Id*. § 19.02(a)(1).

The defendant has the burden of production and persuasion with respect to the issue of sudden passion. *Wooten v. State*, 400 S.W.3d 601, 605 (Tex. Crim. App. 2013). To justify a jury instruction on sudden passion, the record must at least minimally support an inference that: (1) the defendant acted under the immediate influence of a passion such as terror, anger, rage, or resentment; (2) his sudden passion was induced by some provocation by the deceased; (3) he committed the murder before regaining his capacity for cool reflection; and (4) a causal connection existed "between the provocation, passion, and homicide." *Id.* A claim of fear alone or the mere fact that a defendant acts in response to the provocation of another is insufficient to establish the existence of sudden passion. *Id.* at 606–07; *Trevino v. State*, 100 S.W.3d 232, 241 (Tex. Crim. App. 2003).

*Application*

Here, the jury heard testimony from Pena that Martinez had previously lived with him. Pena testified he asked Martinez to move out because Martinez invited people to his house to do drugs and several items disappeared. After Martinez moved out, Pena discovered his

grandmother's ring—a family heirloom—and some flash drives were missing. Shortly after this discovery, Martinez came to Pena's house and Pena confronted Martinez about the missing items. Pena testified Martinez "got mad and pulled a knife." Pena recognized the knife and told Martinez the knife belonged to him. Martinez charged Pena, and they began wrestling. Pena testified that during the struggle, he "was trying to prevent [Martinez] from stabbing [him]" and "[Martinez] was still charging at me." Pena testified that Martinez cornered him at a wall where his rifle hung, so he picked up his rifle and pointed it Martinez. Martinez grabbed the barrel of the rifle and pulled, causing the rifle to fire. Pena testified as Martinez continued to pull the barrel of the rifle, the rifle continued to fire. According to Pena, Martinez was stabbed and his throat was slit in the ensuing struggle over the knife.

Below, Pena argued, "when a person has a knife pointed at them, you certainly are going to act in sudden passion." On appeal, Pena argues the disappearance of his grandmother's ring "would have been enough to negate any cool reflection and summon forth justifiable rage." By Pena's own testimony, however, Pena did not immediately lose his composure about the missing items. He did not immediately lose his composure when he saw Martinez. *See Wooten*, 400 S.W.3d at 605 (providing that record must show defendant acted under immediate influence of passion). Instead, he confronted Martinez about the missing items and "defended [him]self" after Martinez charged him with a knife. *See Trevino v. State*, 60 S.W.3d 188, 193–94 (Tex. App.—Fort Worth 2001, pet. denied) (explaining evidence that accused acted in self-defense does not raise issue of sudden passion); *Naasz v. State*, 974 S.W.2d 418, 423, 425–26 (Tex. App.—Dallas 1998, pet. ref'd) (pointing out that one who provokes or instigates a confrontation cannot claim sudden passion to excuse his actions). Pena testified he was "scared" and "terrified," and during the struggle, he reached for his rifle "to protect [him]self" because he could not run and was cornered by Martinez. *See Trevino*, 100 S.W.3d at 238 (stating evidence that accused acted out of

fear does not raise issue of sudden passion). Pena further testified that after the rifle fired multiple times, Martinez pulled the rifle out of his hands, and then both men tried to grab the knife, which had fallen on the floor. Pena testified when he pulled the knife, he "jerked up" and stabbed Martinez.

This evidence shows Pena shot and stabbed Martinez because he was defending himself, not because he was acting under an immediate influence of passion induced by Martinez's provocation or Pena's rage over the missing items. *See Wooten*, 400 S.W.3d at 605; *Trevino*, 100 S.W.3d at 238. Accordingly, even when viewing the evidence in light most favorable to Pena, we conclude the evidence does not demonstrate Pena acted under sudden passion, and the trial court did not abuse its discretion by denying the instruction. *See Bufkin*, 207 S.W.3d at 782; *Wesbrook*, 29 S.W.3d at 122.

### Motion for New Trial

Pena next asserts the trial court erred in denying his motion for new trial complaining of juror misconduct. Pena contends that during the weekend between the two days of deliberation in the guilt-innocence phase, a juror visited a gun range and learned that a gun's barrel is hot after it is fired, and this outside evidence influenced her decision to disbelieve Pena's testimony that Martinez held the barrel of Pena's rifle as it fired at him. We disagree.

### Standard of Review

We review a trial court's denial of a motion for new trial for an abuse of discretion. *Colyer v. State*, 428 S.W.3d 117, 122 (Tex. Crim. App. 2014). The trial court abuses its discretion in denying a motion for new trial when no reasonable view of the record could support its ruling. *Id*. We view the evidence in the light most favorable to the trial court's ruling, presuming all reasonable fact findings that could have been made against the losing party were made. *Id*. "The trial court is the sole judge of the credibility of the testifying jurors[,]" and there is no abuse of

discretion when the evidence is conflicting on an issue of fact such as jury misconduct. *Brasher v. State*, 139 S.W.3d 369, 374 (Tex. App.—San Antonio 2004, pet. ref'd).

*Applicable Law*

Rule 21.3(f) provides that a trial court shall grant a defendant a new trial when "after retiring to deliberate, the jury has received other evidence." TEX. R. APP. P. 21.3(f). To show jury misconduct, the defendant must show that the jury received the other evidence and that evidence was detrimental or adverse to the defendant. *Bustamante v. State*, 106 S.W.3d 738, 743 (Tex. Crim. App. 2003). To determine whether the jury received the other evidence, "a court may consider how extensively the evidence was examined by the jury and whether the jury was given an instruction to disregard." *Id.* If the other evidence is not examined by the jury or the court gives a curative instruction, then the evidence is not received for purposes of Rule 21.3(f). *Id.*

*Application*

Rule 606(b) of the Texas Rules of Evidence allows a juror to testify about jury deliberations when "an outside influence was improperly brought to bear on any juror." TEX. R. EVID. 606(b). An outside influence is "something outside of both the jury room and the juror." *McQuarrie v. State*, 380 S.W.3d 145, 151 (Tex. Crim. App. 2012). During the motion for new trial hearing, the trial court heard testimony from juror Deborah Pamplin, who testified she had visited a gun range with her family during the weekend break in jury deliberations. At the gun range, she accidentally touched a gun's barrel after it was fired and felt that it was hot. Pamplin subsequently testified that when she returned to jury deliberations on Monday, she did not share the experience with any of the other jurors, but after deliberations she mentioned the experience to Pena's defense counsel. She testified that defense counsel asked her what convinced the jury to return a guilty verdict, and she answered that based on all the evidence she heard, she believed Pena was guilty. Pamplin added that defense counsel asked her if there was "anything else," and she shared her gun range

experience, stating she did not believe Pena's testimony that Martinez could hold the rifle's barrel after it fired.

Pena asserts this testimony shows Pamplin and the other jurors were improperly influenced by outside evidence, warranting a new trial. For support, Pena relies on *Najar v. State*, 586 S.W.3d 110 (Tex. App.—Houston [14th Dist.] 2019, pet. granted), currently pending before the Texas Court of Criminal Appeals. In that case, during jury deliberations in a trial for felony fleeing from a peace officer using a vehicle, jurors heard sirens while inside the building and reasoned the accused should have been able to hear the officer's siren while in his vehicle. *Id.* at 113. *Najar*, however, is distinguishable from this case because unlike the jurors in *Najar*, the jurors in this case testified they did not know about Pamplin's experience during jury deliberations, and Pamplin testified this experience did not change her vote.

Here, Pamplin testified she did not share her gun range experience with the other jurors. In addition, she testified unequivocally that she had made her decision to convict Pena on Friday, before her weekend trip to the gun range. The court also heard testimony from other jurors confirming Pamplin did not share her experience with them and it did not affect their decision. Accordingly, when viewing the evidence in the light most favorable to the trial court's ruling, we conclude the trial court, as the sole judge of the credibility of the jurors' testimony, could have reasonably believed the jury did not receive outside evidence under Rule 21.3(f). *See Colyer*, 428 S.W.3d at 122; *Bustamante*, 106 S.W.3d at 743; *Brasher v. State*, 139 S.W.3d at 374. We therefore hold the trial court did not abuse its discretion in denying Pena's motion for new trial. *See Colyer*, 428 S.W.3d at 122.

## CONCLUSION

Because we conclude the trial court did not err in denying Pena's request for a sudden passion instruction or motion for new trial, we affirm the trial court's judgment.

Beth Watkins, Justice

Do Not Publish