

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| THE STATE OF TEXAS, | § | No. 08-15-00342-CR |
| Appellant, | § | Appeal from the |
| v. | § | 41st Judicial District Court |
| LINDSEY HRADEK, | § | of El Paso County, Texas |
| Appellee. | § | (TC# 20130D00417) |

## **O P I N I O N**

The State of Texas charged Lindsey Hradek ("Hradek") with intentionally and knowingly causing serious bodily injury to a child, by omission, following the death of her infant son. Hradek timely moved for a new trial after a jury returned a verdict convicting her of a lesser included offense of reckless injury to a child by omission. Following a hearing, the trial court granted Hradek's motion based on a claim of ineffective assistance of counsel. By interlocutory appeal, the State challenges the trial court's ruling. We reverse the trial court's grant of a new trial and affirm Hradek's conviction.

## **I. FACTUAL AND PROCEDURAL BACKGROUND**

On October 9, 2012, Lindsey Hradek awoke to find her infant son, Colton Soto, then nearly three-months old, cold to the touch with the side of his face appearing purple. He was not breathing.

At the time, Hradek lived with Colton's father, Bobby Soto, in an apartment they shared with Bobby Soto's father, Henry Soto. Hradek called 911 and the operator instructed her to start CPR. Paramedics, on arrival, quickly noted physical conditions indicating Colton died some time before Hradek called 911. Hradek was subsequently charged with intentionally and knowingly causing serious bodily injury to a child by omission.

### The Trial

*Pre-Trial Rulings*

Assistant Public Defenders David Contreras, Nicole Maesse, and Sara Priddy (collectively, "Defense Counsel") represented Hradek in the case. Prior to trial, in a motion in limine, Contreras raised concerns about evidence purporting to establish Hradek was using cocaine prior to her baby's death. The alleged cocaine-use was referred to in: (1) a recorded jail call between Hradek and her mother made in November 2012; (2) a recorded statement Hradek gave to law enforcement; (3) a recorded statement of Bobby Soto; and (4) a CPS test for cocaine the State conceded would be inadmissible.[1]

Contreras argued Hradek's use of cocaine was an extraneous offense and the State was mistaken on the timeline of her drug use. Further, he argued, Hradek had admitted at most, in a recorded call with her mother, sometime prior to the night Colton died, she used cocaine; however, Hradek did not specifically refer to using cocaine the night the baby died. According to Contreras, the State alleged Hradek intentionally and knowingly, by omission, caused the death of Colton, so cocaine-use was not relevant or connected to the omission alleged since cocaine use is an

---

[1] The prosecutor stated, "I understand that test is not admissible in court because it wasn't the hair test sent out, but they both did test positive."

affirmative act, not an omission. Additionally, the probative value of the cocaine-use would be outweighed by its prejudice.

The State responded the cocaine-use evidence would show Hradek admitted she used cocaine the night her son died. Further, the State disagreed with Contreras's characterization of the offense Hradek was charged with. The State asserted it intended to introduce a statement from Bobby Soto that referred to cocaine use. The State argued the jail call recording between Hradek and her mother corroborated Bobby Soto's statement. Last, the State asserted Hradek called 911 six to seven hours after her baby died, and her cocaine-use was relevant to her culpable mental state.

The trial court listened to audio containing Hradek's statements regarding her cocaine-use. The trial court heard two portions of audio which are not transcribed in our record.[2] Contreras confirmed he was objecting to the audio recording played for the court under Texas Rule of Evidence 404(b). After listening to the portions, the trial court granted the limine motion. Before deciding on admissibility, the trial court explained it would be necessary to hear more of the context in which the State intended to introduce the evidence at trial.

Next, Defense Counsel argued Bobby Soto's statement lacked relevance to Hradek's charge and its admission would violate her right to confront witnesses. During the trial court's discussion of Bobby Soto's statement, the State revealed it had a drug test taken by Hradek and Bobby Soto which was positive for cocaine. The State acknowledged the drug-test was not admissible in court "because it wasn't the hair test." The trial court instructed the State to approach

---

[2] Our record only includes the court's direction to play the audio CD up to when Hradek says, "When my son was alive."

before mentioning either the jail recording or the statement from Bobby Soto.

Contreras told the court Hradek had been employed as an exotic dancer at a local gentleman's club named "Foxy's," and last danced two nights before the baby's death. Contreras explained Hradek discussed her employment in a recorded interview taken the afternoon of Colton's death, and in another interview after her arrest. Contreras asserted references to Hradek's profession as a dancer could "inflame" the jury or view her in a negative light, especially given the jury was composed of eleven women and one man.

The State responded Hradek's employment established a timeline of the events leading up to Colton's death, and provided context to Hradek's statements she was tired when she put Colton to bed because she worked late the night before. The State asserted Hradek's employment was admissible as "contextual" evidence to demonstrate the circumstances surrounding the offense. *See generally Couret v. State,* 792 S.W.2d 106, 107-08 (Tex.Crim.App. 1990)(en banc) (recognizing extraneous matters which aid the jury in determining the context of an offense are admissible at trial). The trial court ruled the State could introduce evidence Hradek worked days before Colton's death; however, any mention of the nature of her work, or the place of her employment, would not be admitted. The trial court directed the State to redact all statements from recorded interviews regarding Hradek's employment at "Foxy's," or as a "dancer." Contreras also raised the issue of mentioning Hradek's cocaine-use during opening statements. At this point, the trial court ruled Bobby Soto's statement referring to Hradek's cocaine-use and the cocaine-use statements by Hradek in the jail-call recording between Hradek and her mother would be admitted. The court added, "because the Defense would submit that the use of cocaine happened prior to that date, then that would necessarily have to be admitted in order to ensure the Defense has its full

4

opportunity to provide its rendition of the facts." Contreras asserted, "[U]nder the Fifth and Fourteenth Amendment, due process, okay, we're looking at something where the indictment says my client purposefully ignored her child with the intent to cause it harm. Purposefully." Contreras also alleged there was no connection or nexus between the cocaine-use and the State's indictment because the cocaine-use did not relate to a knowing or intentional omission.

*Case in Chief*

The State charged Hradek by indictment with intentionally and knowingly, by omission, causing serious bodily injury to her two-and-half-month-old child, by "failing to provide care, protection and control" of the child. The State advanced three primary theories of guilt.

First, it contended Colton died while upside down based on the pattern of lividity noted on the top of his head, the right side of his face, and his right arm and leg. The State asserted a pooling of blood gravitates to the lowest part of the body at the time of death. The State's theory was Colton died after he was left strapped to an "overturned" (upside down) car seat found in Hradek's bedroom. The medical examiner, Dr. Juan Contin, testified Colton's confinement in a car seat would be consistent with outward signs of lividity observed on his body.

The defense's expert, Dr. Mark Shuman, a forensic pathologist, testified he disagreed with Dr. Contin's overturned-car-seat theory as the cause of Colton's death. Dr. Shuman critiqued Dr. Contin's failure to examine the car seat, and more importantly, to put Colton in the car seat prior to the autopsy to ascertain whether the pattern of lividity aligned with the width and size of the car-seat straps. Dr. Shuman further testified the straps of the car seat did not fit the pattern of lividity seen in photographs of Colton's body. He further asserted the car seat strap had a very fine weave pattern that was not observed in photographs of Colton's skin. Dr. Shuman described the

5

actual marks as being wider than the car-seat-strap, and it had a pattern appearing more like a folded fabric or elastic. Dr. Shuman added the strap would not wrap all the way around the thigh in the way the marks are presented on Colton's thigh. Based on his examination of records and photographs, Dr. Shuman testified within medical certainty the child did not die from being upside down.

The State's second theory focused on Hradek's alleged failure to monitor Colton's diagnosed sleep apnea condition, and the possibility Hradek slept with Colton in the same bed on the night of his death, either of which could have contributed to his death. The State presented evidence Hradek had discontinued the use of a prescribed sleep apnea monitor for Colton without direction to do so by the prescribing physician. In response, the Defense argued Hradek did not understand how long she needed to keep Colton on the monitor, faulting the prescribing physician in not providing better guidance, and pointing out the physician was unsure what, if anything, his office told her. An employee of the company which provided the sleep apnea monitor testified the physician's office was extremely busy and it could be difficult to get a written order to discontinue the monitor use.

The State's third theory of guilt centered on the allegation Hradek used cocaine on the night of Colton's death before putting him to sleep, which it asserted supported Hradek's culpability for the offense charged. Hradek's cocaine-use was introduced through Contreras's cross-examination of Detective Aman. Contreras inadvertently elicited information regarding the positive drug test when he asked Aman an open-ended question regarding the cause of Colton's death. The State also played for the jury the recording in which Hradek admitted to her mother she had used cocaine. At the request of Defense Counsel, the 43-minute call played in its entirety.

6

The State, on direct, asked Aman, based on his investigation, what offense had been committed. He answered "[i]t was – it was injury to a child by negligence, by -- ended up in murder. I mean, death of a child." Contreras questioned Detective Aman about his last assertion, i.e., that the case had started as injury to a child, caused by negligence, but then turned into a murder. Defense Counsel asserted Aman found no evidence of any intentional act by Hradek caused the child's death. Detective Aman responded "Well, we found – we found evidence that showed that this was – [Hradek] caused the child's death." Contreras responded, "By just seeing the car seat on the floor?" Aman answered, "No, not just by seeing a car seat on the floor, but connection – the connection of the car seat with the injuries of the child. And then, also, the – the state of intoxication of [Hradek]." Contreras pointed out Aman had failed to mention Hradek's intoxication in his statement. Aman replied, "There was cocaine intoxication." Contreras asked, "How did you know?" Aman replied, "CPS did a test on [Hradek] and her husband . . . And that showed there was."

The State asserted Aman had been made aware he should not disclose the drug test, but Contreras had directly asked. The trial court told Contreras he had violated his own limine order against the State. In responding, Contreras pointed out Aman had mentioned it first. The trial court reviewed the record and found Contreras failed to object to Aman's nonresponsive answer regarding the inclusion of the positive drug test in his report. In asking an open-ended question regarding the basis of Aman's opinion of what offense Hradek should be charged with, Contreras had opened the door regarding the positive drug test. Contreras asked the court to instruct the jury to disregard the testimony of the positive drug test.

However, shortly after, Contreras reversed his position and told the court he would

continue down the line of questioning given the court had ruled evidence of Hradek's cocaine-use would be admitted through the jail recording and Bobby Soto's statement detailing Hradek's cocaine use. The State responded, "[t]he CPS test is inadmissible under any circumstances. I mean, we can't base it on science." According to the State, Hradek, in the jail call recording, admitted to her mother she used cocaine the night Colton died. Hradek's recorded statement to Detective Lara she used cocaine two days prior to Colton's death was redacted to omit any mention of her cocaine use and her employment as a dancer.

When Aman returned for further questioning, Contreras elicited further details regarding the positive drug test. Aman explained the test shows cocaine-use within a 48-hour period. Lara, however, under cross-examination from Defense Counsel, described the apartment as being clean and tidy, with no signs of drug use or other wrongdoing when he entered.

In establishing Hradek's cocaine-use, the State offered a portion of the jail recording of the phone call between Hradek and her mother, Whitney Hradek. The trial court turned to Defense Counsel for their position on how much of the jail call recording should be heard by the jury, and Maesse responded, "All of it, Your Honor." In the call, Hradek referred to her cocaine use, although Defense Counsel and the State disputed whether her comments referred to cocaine use the night of Colton's death, or to another day prior.

The State presented several witnesses regarding the investigation of the case. Detectives testified Hradek gave an inconsistent statement to first responders who arrived on scene, compared to when she was later questioned by law enforcement, as to the timing of Colton's distress. Paramedics testified Hradek described Colton had been unresponsive for ten minutes before they arrived. They noted Colton showed signs of rigor mortis—described as setting in four to six hours

8

after death—and questioned Hradek's assertion Colton had only "been down" ten minutes. At trial, Defense Counsel explained Hradek's discrepancy by asserting she had mistakenly believed Colton was alive during her call to 911 because of a sound she heard while she tried to perform CPR. Defense Counsel encouraged the jury to listen to the 911 call asserting the sound could be heard on the call.

Hradek told detectives she and Bobby had stayed up late watching videos the night before, and she gave Colton a feeding at 3:00 a.m. After feeding him, Hradek slept until approximately 10:00 a.m. and woke to find Colton purple and cold to the touch. The State, questioning Hradek's timeline, asserted she provided inconsistent statements about where Colton slept during the night. When interviewed at the apartment, Hradek told detectives she placed Colton in his crib after his 3:00 a.m. feeding. In a later recorded interview, however, she said she could not recall whether Colton was in the crib or in the bed. Following her arrest, Hradek gave a second recorded interview in which she admitted Colton had been in bed with her and Bobby Soto at the time of his death. She said she initially lied about where Colton slept as she recognized it was unsafe to place him in an adult bed, particularly because of his sleep apnea diagnosis. Hradek explained she feared she would get in trouble if she admitted Colton slept in bed with her; she speculated Colton may have accidently smothered in the bed, or he may have slept at a "weird angle" due to Bobby's heavier body-weight on the mattress.

At the request of the State, and over Hradek's objection, the trial court included in the jury charge an instruction on the lesser included offense of reckless injury to a child by omission.[3] The

---

[3] During its deliberations, the jury sent a note to the trial court, asking what would happen if they were unable to come to a unanimous verdict, to which the trial court informed the jury that it would be necessary to declare a mistrial.

jury convicted Hradek of the lesser included offense of reckless injury to a child by omission and assessed a thirteen-year prison term and fine of $7,500.

## Motion for New Trial

Hradek timely filed a motion for new trial. The motion raised six bases for relief to include the allegation she had been denied effective assistance of counsel. Hradek's motion listed three distinct claims of deficient performance by her former attorney: (1) failure to conduct an independent investigation; (2) failure to object to inadmissible, highly prejudicial and inflammatory evidence, and presentation of such evidence through Defense Counsel's own questioning; and (3) failure to conduct a thorough and complete voir dire of the jury panel. The trial court held an evidentiary hearing on the motion for new trial.

During the new trial hearing, Hradek presented testimony from her three former trial attorneys and an expert witness who testified about voir dire examinations. At the new trial hearing, Hradek asserted the evidence was legally insufficient to convict her of the lesser included offense, the court provided an improper jury charge, the evidence of cocaine use was inadmissible, and her trial counsel was ineffective. The State rebutted Hradek's assertions but presented no witnesses.

Hradek's motion for new trial was granted. The State requested findings of fact and conclusions of law.[4] The substance of the findings and conclusions rested solely on Hradek's claim of ineffective assistance of counsel. The findings of fact included 45 individual findings. Several of the findings pertained to the credibility of Hradek's former defense attorneys, who

---

[4] We granted the State's motion to abate our proceeding and issued an order remanding to the trial court for entry of findings of fact and conclusions of law.

testified at the hearing on several topics including their representation of Hradek, their investigation of the case, preparation for trial, trial strategy pertaining to evidence, and the lack of substantive questions of the jury panel during a forty-six-minute voir dire presentation.

The trial court found defense attorney Maesse was out of town for two weeks immediately prior to the jury trial, including the day of voir dire, and did not prepare for trial during those two weeks. The court found Maesse credible when she testified, she discussed trial strategy with co-counsel Contreras only once during the nearly two years prior to trial, she was not aware of the trial strategy until the day of trial, and she did not feel prepared for trial. The court found Contreras was not credible on multiple findings related to his representation.

The trial court also made multiple conclusions of law regarding the ineffective-assistance-of-counsel claim. First, additional portions of the recorded jail call included statements by Hradek and her mother which were inadmissible pursuant to Rule 404(b) of the Texas Rules of Evidence. Second, Defense Counsel did not act pursuant to an objectively reasonable trial strategy or standard of reasonableness in many respects including: (1) requesting admission of the entire jail recording without being familiar with it; (2) failing to ask any substantive questions in voir dire; (3) failing to conduct an independent investigation of Bobby and Henry Soto, both of whom were present in the home when Colton died; (4) failing to ensure agreed-to redactions were made to Hradek's video-recorded statement; (5) eliciting evidence of cocaine intoxication and an otherwise inadmissible positive drug test for cocaine; (6) failing to request inclusion of the statutory definition of "omission" in the jury charge and (7) failing to adequately prepare for trial. Third, the trial court concluded the State's evidence of conduct by omission, and the requisite state of mind pled in the indictment of intentional and knowing, was marginal. Finally, the trial court

11

concluded based on its findings of fact and conclusions of law, there was a reasonable probability the result of Hradek's trial would have been different.

Based on its statutory right, the State timely filed this interlocutory appeal. *See* TEX.CODE CRIM.PROC.ANN. art. 44.01(a)(3).

## II. DISCUSSION

In its first issue, the State alleges the trial court erred in granting a new trial based on ineffective assistance of counsel. We agree.

### *Scope of Review*

As a preliminary matter, we address the scope of review. On appeal, the State acknowledges the trial court granted a new trial based solely on Hradek's claim of ineffective assistance of counsel. Nonetheless, to avoid a procedural default and waiver of claims, the State assigned error not only to all grounds asserted by Hradek in her motion for new trial, including claims other than ineffective assistance of counsel, but also to sub-issues of the ineffective-assistance-of-counsel claim that are not expressly included in the findings of fact and conclusions of law of the trial court. *See State v. Copeland*, 501 S.W.3d 610, 614 (Tex.Crim.App. 2016).

As the State pointed out during oral argument, all issues not connected to ineffective assistance of counsel are moot because they were overruled by operation of law at the trial level. *See* TEX.R.APP.P. 21.8(a), (c)(matters not timely ruled on are deemed denied 75 days after a court imposes or suspends sentence in open court). Accordingly, we review only the trial court's ruling granting a new trial on Hradek's ineffective-assistance-of-counsel claim.

### *Standard of Review*

The granting of a new trial rests within the sound discretion of the trial court. *State v.*

12

*Herndon*, 215 S.W.3d 901, 906 (Tex.Crim.App. 2007). A trial court's new trial decision is reviewed for abuse of discretion as that discretion "is not unbounded or unfettered." *State v. Arizmendi*, 519 S.W.3d 143, 148 (Tex.Crim.App. 2017). A trial court may not grant a new trial "simply because it believes that the defendant has received a raw deal," or for a "non-legal or legally invalid reason." *Id*.

To determine whether the trial court abused its discretion, we must view the evidence in the light most favorable to the ruling and uphold it if it falls within the zone of reasonable disagreement. *Webb v. State*, 232 S.W.3d 109, 112 (Tex.Crim.App. 2007). We do not substitute our judgment for that of the trial court, but rather we decide whether the trial court's ruling was arbitrary or unreasonable. *Id.* As fact finder, the trial court is the sole judge of the credibility of witnesses testifying at a hearing including when one is held on a motion for new trial. *Okonkwo v. State*, 398 S.W.3d 689, 694 (Tex.Crim.App. 2013). We review the trial court's determination of historical fact for an abuse of discretion, as well as mixed questions of law and fact that turn on an evaluation of the credibility and demeanor of witnesses, affording almost total deference to the trial court's findings if supported by the record. *Id.; State v. Guzman*, 955 S.W.2d 85, 89 (Tex.Crim.App. 1997).

At a hearing on a motion for new trial, the defendant carries the burden of proof. *See Patrick v. State,* 906 S.W.2d 481, 498 (Tex.Crim.App. 1995). On appeal, the State carries the burden to prove the trial court erred in granting a new trial to the defendant. *State v. Belcher,* 183 S.W.3d 443, 447 (Tex.App.—Houston [14th Dist.] 2005, no pet.)(*citing Lee v. State*, 322 S.W.2d 260, 262 (1958)).

### *Ineffective Assistance of Counsel (IAC)*

It is well recognized a defendant has a Sixth Amendment right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Hernandez v. State*, 726 S.W.2d 53, 57 (Tex.Crim.App.1986)(adopting *Strickland* as the applicable standard under the Texas Constitution). "[T]he Sixth Amendment right to counsel exists, and is needed, in order to protect the fundamental right to a fair trial." *Strickland*, 466 U.S. at 684. A fair trial is long recognized as "one in which evidence subject to adversarial testing is presented to an impartial tribunal for resolution of issues defined in advance of the proceeding." *Id*. *Strickland's* two-pronged test is the benchmark for judging whether counsel's conduct so undermined the proper functioning of the adversarial process the trial cannot be relied on as having produced a reliable result. *Thompson v. State*, 9 S.W.3d 808, 812-13 (Tex.Crim.App. 1999). An accused is entitled to be assisted by an attorney who plays the role necessary to ensure the trial is fair. *Strickland*, 466 U.S. at 685.

To prevail on a claim of ineffective assistance of counsel, a defendant must establish by a preponderance of evidence her counsel's performance was constitutionally deficient, and the deficient performance prejudiced her defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Miller v. State*, 548 S.W.3d 497 (Tex.Crim.App. 2018). Under the first prong, the defendant must demonstrate counsel's performance fell below an objective standard of reasonableness. *Strickland,* 466 U.S. at 688. To make this showing, the defendant must identify the "acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690.

Under the second prong, a defendant must establish a reasonable probability exists, but for

his or her attorney's deficient performance, the result of the proceeding would have been different. *See Strickland*, 466 U.S. at 694; *see also Miller v. State,* 548 S.W.3d 497, 499 (Tex.Crim.App. 2018); *Thompson v. State*, 9 S.W.3d 808, 812-13 (Tex.Crim.App. 1999). "Reasonable probability" is that which is "sufficient to undermine confidence in the outcome" of the judicial proceedings. *Strickland*, 466 U.S. at 694; *Jackson v. State*, 973 S.W.2d 954, 956 (Tex.Crim.App. 1998).

The Texas Court of Criminal Appeals and the Fifth Circuit have recognized a reasonable probability standard has a lower burden of proof as compared to the preponderance standard. *Ex parte Buck*, 418 S.W.3d 96, 110 n.11 (Tex.Crim.App. 2013)(*citing Gonzales, Ex Parte*, 204 S.W.3d 391, 394 (Tex.Crim.App. 2006))("A reasonable probability is a probability sufficient to undermine confidence in the outcome."); *see also Bouchillon v. Collins*, 907 F.2d 589, 595 (5th Cir. 1990)("sufficient to undermine confidence in the outcome" is "a lower burden of proof than the preponderance standard"). More recently, the Court of Criminal Appeals noted "[t]he 'ultimate focus' of the *Strickland* prejudice standard is the fundamental fairness of the proceeding whose result is being challenged." *Miller*, 548 S.W.3d at 499 (*citing Strickland*, 466 U.S. at 696). The prejudice standard requires the reviewing court to ask whether "the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results." *Miller*, 548 S.W.3d at 499 (*citing Strickland*, 466 U.S. at 696). If trial counsel's performance implicates a verdict of guilt, the critical question examined is "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id*. The prejudice prong of *Strickland* is a mixed question of law and fact that often contains subsidiary questions of historical fact, some of which may turn upon the credibility and demeanor of witnesses. *Kober v. State*, 988 S.W.2d 230, 233 (Tex.Crim.App.

1999).

The ultimate question of whether prejudice existed is reviewed *de novo*. *Johnson v. State*, 169 S.W.3d 223, 239 (Tex.Crim.App. 2005). Strickland's two prongs are not required to be analyzed in any particular order, and we may consider the prejudice prong first. *Ex parte Martinez,* 330 S.W.3d 891, 901 (Tex.Crim.App. 2010)(*citing* S*trickland,* 466 U.S. at 697). In determining whether an appellant has been prejudiced by counsel's deficient performance, the court "must consider the totality of the evidence before the judge or jury." *Strickland*, 466 U.S. at 695. Failure to make the required showing of sufficient prejudice defeats an ineffectiveness claim. *Thompson*, 9 S.W.3d at 813.

### Multiple Grounds for IAC

The trial court's findings of deficiency include: (1) eliciting testimony of the CPS drug test; (2) voir dire examination; (3) jury charge error; (4) Defense Counsels' failure to investigate;[5] (5) inadequate preparation for trial; and (6) admission of the additional portions of the jail recording.

A. Admission of Testimony Regarding Hradek's CPS Drug Test

We begin with the first evidentiary issue pertaining to the court's ruling of ineffective assistance of counsel. In its findings of fact, the trial court found: (1) Contreras improperly elicited evidence of an "otherwise inadmissible drug test by CPS that indicated cocaine usage by [Hradek];" (2) Contreras lacked credibility in his explanation as to why he elicited such

---

[5] As part of the failure to conduct an independent investigation argument, Hradek includes a complaint Defense Counsel failed to ensure that agreed-to redactions were made to her video-recorded statement that was part of State's Exhibits 35 and 48. The trial court determined that failure contributed to the prejudice finding it made regarding Hradek's ineffective-assistance-of-counsel claim. Because this finding relates to the improper admission of inadmissible evidence, we will address it in the final section of our opinion regarding the admission of State's Exhibit 51.

inadmissible evidence; and (3) Contreras failed to provide any "credible reasonable trial strategy" for eliciting such evidence.

Ultimately, the trial court concluded its findings regarding the drug test admission contributed to the reasonable probability the result of the proceeding would have been different. The State argues the trial court erred by finding Contreras's conduct prejudiced Hradek's defense. We agree.

Prior to reading the indictment and Detective Aman's testimony, the trial court ruled the statements made by Bobby Soto regarding cocaine use and the portion of Hradek's jail call recording in which she admits to cocaine use would be admitted. Aman testified he concluded Hradek intentionally injured the baby based on the injuries from the car seat and Hradek's alleged state of intoxication. Contreras then asked the basis for Aman's belief Hradek was intoxicated by cocaine. Aman replied a CPS drug test showed cocaine intoxication. Aman testified he was told the CPS field drug test administered to Hradek could detect cocaine-use within forty-eight hours. Aman cited to the CPS positive drug test result in the complaint affidavit for probable cause in Hradek's arrest warrant. The CPS drug test was not offered into evidence and the State was clear it considered the test inadmissible. Subsequently, the jail recording was admitted and played for the jury in which Hradek admitted to using cocaine.

At the outset, we note the information contained in an arrest warrant affidavit may be based on either the affiant's personal observations or hearsay information. *Valadez v. State,* 476 S.W.3d 661, 670 (Tex.App.—San Antonio 2015, pet. ref'd)(*citing Belton v. State,* 900 S.W.2d 886, 893 (Tex.App.—El Paso 1995 pet. ref'd)). Here, Aman responded to Contreras's challenge Aman did not have probable cause to charge Hradek with intentional injury to a child. *Smith v. State,* 574

S.W.2d 555 (Tex.Crim.App. 1978)(hearsay relating to probable cause is not admissible before a jury unless the issue of probable cause has been raised before the jury); *Smith v. State,* 511 S.W.2d 296 (Tex.Crim.App. 1974); *Vara v. State,* 466 S.W.2d 315 (Tex.Crim.App. 1971). While the CPS drug test may have been inadmissible initially, when Contreras challenged Aman's probable cause basis during the jury trial, the hearsay Aman relied upon for probable cause—the CPS drug test results—was admissible.

The trial court's conclusion Contreras's eliciting evidence of an inadmissible drug test constituted deficient performance and contributed to a reasonable probability the outcome of Hradek's trial would have been different but for such action fails for three reasons. First, an ineffective assistance claim alleging counsel was deficient in failing to object to the admission of evidence must show, as part of the claim, the unobjected-to evidence was inadmissible. *Ortiz v. State,* 93 S.W.3d 79, 93 (Tex.Crim.App. 2002), *cert. denied,* 538 U.S. 998 (2003). Appellee fails to identify how Aman's testimony regarding the CPS test is inadmissible other than the State's representations it believed the test to be inadmissible. However, admissibility of the CPS test was never established because neither side offered it into evidence during the trial. Even assuming, *arguendo,* the CPS drug test is inadmissible, Hradek does not explain how Aman's testimony regarding his reliance on the positive cocaine drug test for probable cause is inadmissible.

Second, Hradek does not explain what objection Contreras should have made and how the trial court would have committed error in overruling it. To prevail on an ineffective assistance claim, the defendant must show the trial court would have committed error in overruling such an objection, had counsel made one. *Ex parte White,* 160 S.W.3d 46, 53 (Tex.Crim.App. 2004). Further, well-established case law instructs a defendant cannot complain of testimony he first

18

elicited on cross-examination. *Christ v. State,* 480 S.W.2d 394 (Tex.Crim.App. 1972); *Mason v. State,* 472 S.W.2d 787 (Tex.Crim.App. 1971); *Rogers v. State,* 420 S.W.2d 714 (Tex.Crim.App. 1967). Even if counsel fails to object to evidence inadvertently elicited, that action which "waive[s] evidentiary grounds may [not] automatically be transformed into grounds for relief for ineffective assistance of counsel." *Ex parte Ewing,* 570 S.W.2d 941, 948 (Tex.Crim.App. 1978). Contreras's cross-examination of Aman which elicited the positive CPS drug test testimony cannot support a claim for ineffective assistance of counsel because Hradek does not point out how the trial court would have erred in overruling an objection to it, nor what objection she believes Contreras should have lodged.

Third, even if Aman's testimony was inadmissible, an ineffective-assistance-of-counsel claim fails when the record contains inadmissible evidence which is simply cumulative of properly-admitted evidence at trial. *Ingham v. State*, 679 S.W.2d 503 (Tex.Crim.App. 1984); *see Matz v. State,* 21 S.W.3d 911, 912–13 (Tex.App.—Fort Worth 2000, pet. ref'd)(even where trial court erred in admitting evidence, where evidence is cumulative of properly admitted testimony on the same issue, error should be ignored because appellant's substantial rights are not affected). Here, reviewing the totality of the evidence, as we must, we conclude the record does not support the conclusion there was a reasonable probability of a different outcome if trial counsel did not open the door to testimony about Hradek's alleged positive cocaine test. This is especially true given Hradek admitted she used cocaine while Colton was alive was properly admitted into evidence.

B. No Substantive Questions During Voir Dire Examination

In its findings of fact, the trial court found Defense Counsel failed to ask any "substantive

19

questions of the jury panel to illicit information which would be useful to determine an individual's ability to be fair and impartial in this case." The trial court further found Defense Counsel's voir dire took approximately forty-six minutes, the same amount of time provided for the State's voir dire. After finding Contreras was not credible when he explained his "no questions" strategy, the trial court concluded Defense Counsel's conduct fell below an objective standard of reasonableness, and this deficiency contributed to a reasonable probability that the result of the proceeding would have been different. On appeal, the State challenges both prongs of *Strickland* by contending Defense Counsel's performance was not deficient and Hradek did not demonstrate any prejudice resulting from her counsel's voir dire. We agree.

*Background*

In her motion for new trial, Hradek argued Defense Counsel failed to conduct an adequate voir dire of the jury panel by failing to inquire into the following areas: (1) whether the panel members or a close friend or family member of the panel had been victims of crime; (2) whether the panel members or a close friend or family member of the panel were related to law enforcement; (3) whether any of the panel members would hold it against a defendant if she did not testify at trial; and (4) whether the panel members could consider the minimum sentence of five years' probation if they found a defendant guilty of intentionally or knowingly causing serious bodily injury to a child. At the hearing on Hradek's motion for new trial, her expert witness, Charles Louis Roberts, a board-certified criminal defense attorney, testified a defense attorney's failure to ask such questions of the jury panel would render his conduct below the standard of reasonableness. Roberts acknowledged he had not read the record in Hradek's case, and he was speaking hypothetically.

20

The purpose of voir dire is in part to identify jurors who might harbor a bias or prejudice "against one of the parties or some aspect of the relevant law," as well as to facilitate the parties' intelligent use of peremptory challenges. *Sanchez v. State,* 165 S.W.3d 707, 710–11 (Tex.Crim.App. 2005). Thus, "counsel must be diligent in eliciting pertinent information from prospective jurors during voir dire in an effort to uncover potential prejudice or bias . . . [and] counsel has an obligation to ask questions calculated to bring out information that might indicate a juror's inability to be impartial." *Brasher v. State,* 139 S.W.3d 369, 373 (Tex.App.—San Antonio 2004, pet. ref'd).

Nevertheless, jury selection is a highly strategic matter, and courts are loath to micromanage the way trial counsel conducts his or her voir dire. *See, e.g., Calderon v. State,* 950 S.W.2d 121, 127 (Tex.App.—El Paso 1997, no pet.); *Wilson v. State*, 15 S.W.3d 544, 554 (Tex.App.—Dallas 1999, pet. ref'd); *Beck v. State,* 976 S.W.2d 265, 267 (Tex.App.—Amarillo 1998, no pet.). Therefore, Defense Counsel's failure to pose certain questions during voir dire does not, in and of itself, mark them as ineffective; instead, a defendant must demonstrate the failure to ask particular questions in voir dire constituted conduct so "outrageous" no competent attorney would have engaged in it. *See Goodspeed v. State,* 187 S.W. 3d 390, 392-94 (Tex.Crim.App. 2005).

In addition, particularly in cases where the trial court has limited the time allowed for voir dire, counsel for the defendant need not repeat topics already adequately covered by the prosecutor and/or the trial court. *See Goodspeed*, 187 S.W.3d at 392; *see also Darkins v. State,* 430 S.W.3d 559, 570 (Tex.App.—Houston [14th Dist.] 2014, pet. ref'd); *Montes v. State,* No. 08-02-00406-CR, 2004 WL 594958, at *7–8 (Tex.App.—El Paso March 25, 2004, pet. ref'd)(not designated for publication).

Finally, even in cases in which a defense attorney's performance during voir dire can be considered deficient, it is still incumbent upon the defendant to address the second prong of the *Strickland* test and show actual prejudice resulting from that performance. *See Thompson,* 9 S.W.3d at 812; *see also Williams,* 970 S.W.2d at 184.

Our review of the record bears out Hradek's claim Defense Counsel did not ask questions regarding any of the topics complained of in her motion for new trial. At the new trial hearing, Contreras admitted he failed to ask any such questions of the jury panel, and he did not eliminate any potential members of the jury based on his questions. We therefore examine the record to determine whether the prosecutor or the trial court adequately covered the topics in question, and if not, whether Hradek was prejudiced by Defense Counsel's failure to make any inquiry on these topics.

*Questions Regarding the Fifth Amendment Right to Remain Silent*

During voir dire, the prosecutor explained a defendant has a Fifth Amendment right not to testify at trial and asked the panel if there was anyone on the panel who would "need to hear [the defendant's] side of the story," and for those individuals to raise their "cards" up. At the new trial hearing, Contreras acknowledged, although he did discuss the Fifth Amendment during voir dire, he did not ask the panel members any follow-up questions on this subject.[6] He explained, however, he did not believe it was necessary to do so, as he believed the prosecutor had adequately addressed this issue with the panel members with her specific questions. Contreras further explained he believed the panel members who responded positively to the prosecutor's question and expressed

---

[6] The record reflects that Contreras explained to the panel the nature of a defendant's Fifth Amendment right, explaining that there could be a variety of reasons why a defendant might choose to remain silent, and provided examples of situations in which a defendant might feel uncomfortable taking the stand.

22

their inability to respect a defendant's right to remain silent would be eliminated for cause and did not want to give those panel members a chance to "rehabilitate" themselves by revisiting the issue with them. In fact, the record reflects each panel member who expressed this sentiment was eliminated for cause, and therefore, none of them were seated on the jury. On this topic, the record does not support the trial court's finding counsel's voir dire contributed to a reasonable probability the result of the trial would have been different.

*Questions Regarding Whether the Panel Members Could Have Considered Probation*

During voir dire, the prosecutor explained the possible range of punishment for a first-degree felony and noted the range included the possibility of probation. The prosecutor then asked the panel members if they would be able to consider probation in a case involving a serious injury to a child, and several panel members responded they could not.

The record reflects Contreras also explained the possible range of punishment, including the possibility of probation, and gave the panel various examples of cases in which juries sentenced defendants to probation. He explained even in heinous criminal cases, extenuating circumstances could exist to warrant the imposition of probation. However, Contreras admitted to not asking any follow-up questions regarding whether the panel members would be able to consider probation in a case involving injury to a child, believing the prosecutor adequately covered the subject and all the panel members who stated they could not consider probation would be eliminated for cause. As Contreras suspected, all the panel members who stated they could not consider probation were, in fact, eliminated for cause, and none of them were seated on the jury.[7] Again, the record does

---

[7] In a supplement to her motion for new trial, Hradek provided an affidavit from trial counsel's mitigation specialist, who stated that she interviewed three of the jurors who were seated in Hradek's case after the trial ended, and that all three of the jurors advised her that if Defense Counsel had asked them if they could consider probation for the charged

not support the trial court's finding Defense Counsel's voir dire contributed to a reasonable probability the result of the trial would have been different.

*Whether the Panel Members were Crime Victims or Related to Law Enforcement*

The record reflects during voir dire, neither the prosecutor nor Contreras asked the jury any specific questions regarding whether they, or any close friends or family members were related to law enforcement and/or were the victims of a crime. At the new trial hearing, Contreras acknowledged he did not ask any questions of this nature, explaining he relied on the jury questionnaire given to all panel members, which asks them to disclose this information. He acknowledged, however, panel members do not always fill out the questionnaires thoroughly or accurately, and it might have been helpful to ask additional questions on this subject. Although Contreras sought, at least in part, to blame his failure to ask questions on this subject on the trial court's decision to limit each side's voir dire to forty-five minutes, he testified he did not object to the time limitation and indicated he could have asked questions of this nature within the time allotted to him. Nevertheless, Contreras testified he did not believe further questioning of the panel members on this subject was necessary, as he was pleased with the panel members who he believed would remain in the jury pool after the above-described jurors who stated on the record

---

offense, they would have answered that they could not. The State correctly points out that the affidavit was not admitted into evidence at the new-trial hearing, and therefore cannot be considered as evidence in support of the trial court's decision to grant Hradek's motion for new trial. *See Jackson v. State*, 139 S.W.3d 7, 20-1 (Tex.App.—Fort Worth 2004, pet. ref'd); *see also Esparza v. State*, No. 08-12-00007-CR, 2014 WL 97301, at *7 (Tex.App.—El Paso Jan. 10, 2014, no pet.)(not designated for publication)(noting that an affidavit attached to a motion for new trial is not evidence and it must be presented at a hearing on the motion to be considered on appeal)(*citing Rouse v. State,* 300 S.W.3d 754, 762 (Tex.Crim.App. 2009). Moreover, even if we were to consider the affidavit, it would not change our decision. Our understanding of the affidavit is that these three jurors sat silent when the prosecutor asked whether they would have been able to consider probation, and therefore did not honestly answer her question. Contreras, however, had no way of anticipating that these three jurors would not respond honestly, and therefore, this evidence would not lead us to conclude that Contreras's failure to repeat the prosecutor's question on this subject fell below an objective standard of reasonableness.

24

they could not respect a defendant's constitutional rights were dismissed for cause.

Moreover, we note Hradek did not present any evidence during the new trial hearing indicating anyone who on the jury was a crime victim or related to law enforcement. More importantly, Hradek did not present any evidence any of the panel members seated on the jury had any bias against defendants based on the panel member's personal history, and therefore failed to demonstrate she was prejudiced by Contreras's failure to question the jurors on this subject.[8] On this topic, we again conclude the record does not support the trial court's finding counsel's voir dire contributed to a reasonable probability the result of the trial would have been different.

C. No Definition of the Term "Omission" in the Jury Charge

In its findings of fact and conclusions of law, the trial court found Defense Counsel failed to request the statutory definition of "omission" be included in the jury charge and this failure fell below an objective standard of reasonableness. The court also found Contreras was not credible in his explanation for his failure to request the statutory definition of "omission" be included in the jury charge. The trial court concluded Defense Counsel's failure to request the statutory definition be included in the jury charge fell below an objective standard of reasonableness. The trial court further found these findings and conclusions contributed with others to creating a reasonable

---

[8] In her motion to supplement, Hradek provided copies of the jury sheets, indicating that three panel members who were seated on the jury responded on their questionnaires that they had connections to law enforcement, and that one of those three jurors stated that she had also been the victim of a crime. In addition, one other juror responded that she had a close friend or relative who had been the victim of a home invasion in 2012. As set forth above, however, the State points out that this evidence was not properly admitted into evidence at the new-trial hearing, and therefore should not be considered by this Court on appeal. Without this evidence, the State correctly points out there is simply no showing Hradek was prejudiced by Contreras's failure to question the panel members on these issues. Moreover, even if we were to consider this evidence, it would not convince us. Hradek met her burden of establishing that the outcome of her trial would have been different but for Contreras's failure to question the jury. Even if jurors were seated on the panel who were crime victims or related to law enforcement, we do not believe that this, standing alone, raises a reasonable probability the outcome of the trial would have been different, without a showing that these jurors harbored any bias against the defense due to their personal histories.

25

probability the result of the proceeding would have been different.

*Preliminary Issue*

As a preliminary matter, the State argues because Hradek did not raise this issue in her motion for new trial, the trial court erred when it considered Contreras's failure to request the instruction as a ground for finding Contreras ineffective. In support of its argument, the State correctly points out Rule 21.4 of the Texas Rules of Appellate Procedure provides a defendant must file a motion for new trial within thirty days after the trial court imposes sentence, specifically raising any grounds it wishes to be considered, and any amendments to the original motion raising new grounds must also be filed within that same time period.[9] *State v. Frias,* 511 S.W.3d 797, 807-808 (Tex.App.—El Paso 2016, pet ref'd)(*citing* TEX.R.APP.P. 24.1). Courts have noted it is necessary for the defendant to specifically identify the bases of her claims in a motion for new trial to give the "[trial] court enough notice to prepare for the hearing and make informed rulings and to allow the State enough information to prepare a rebutting argument." *State v. Zalman*, 400 S.W.3d 590, 593-94 (Tex.Crim.App. 2013). However, while the failure to file a motion for new trial within thirty days deprives the trial court of jurisdiction to hear the motion, there is no jurisdictional bar to hearing a late-filed amendment to an otherwise timely-filed motion; therefore, a trial court is only barred from considering new issues in an untimely-filed amendment if the State objects to hearing those new issues. *See, e.g., State v. Moore*, 225 S.W.3d 556, 557, 568-70 (Tex.Crim.App. 2007); *see also Cueva v. State*, 354 S.W.3d 820, 822 (Tex.Crim.App. 2011)(Alcala, J., concurring). Thus, if the State objects, the trial court is not entitled to consider

---

[9] Rule 21.4 provides a motion for new trial must be filed "no later than 30 days after, the date when the trial court imposes or suspends sentence in open court." TEX.R.APP.P. 21.4(a).

any additional grounds not raised in the original motion. *Frias*, 511 S.W. 3d at 805-06, 808 (where State properly objected to untimely amendment to defendant's motion for new trial raising new grounds on claim of ineffective assistance of counsel, the trial court was not entitled to rely on any new ground raised in the amendment); *see also State v. Arizmendi*, 519 S.W.3d 143, 150–51 (Tex.Crim.App. 2017)(trial court was barred from considering defendant's ineffective-assistance-of-counsel claim, where State lodged a proper objection after defendant raised it for the first time in an untimely amendment to a motion for new trial); *Zalman*, 400 S.W.3d at 591–92 (trial court abused its discretion in granting motion for new trial on grounds raised in untimely amendment where State properly objected).

Conversely, if the State fails to object to the new issues raised in an untimely amendment, the trial court may consider those issues in determining whether to grant the new trial. *See Moore*, 225 S.W.3d at 570 (trial court was entitled to rely on new issues not contained in the defendant's motion for new trial, where the State failed to object to defendant's late-filed amendment within the seventy-five-day period before the trial court's order granting a new trial became final).

Moreover, the Court of Criminal Appeals has held even if a defendant does not file a formal written amendment to a motion for new trial, the trial court may consider new issues raised by a defendant, which were not included in her original motion, if those new issues were "raised and litigated without objection" at some point in the "motion-for-new-trial proceedings." *Clarke v. State*, 270 S.W.3d 573, 574, 580–81 (Tex.Crim.App. 2008). Thus, it is sufficient if the defendant brings an "aspect or enlargement of his original claim to the attention of both the prosecutor and the trial judge" during a hearing on the motion for new trial, and the State does not object to allowing the new issues to be heard. *Id*. at 581; *see also State v. Cedillos,* No. 08-14-00248-CR,

2016 WL 2621077, at \*4 (Tex.App.—El Paso May 6, 2016, pet. ref'd)(not designated for publication)(recognizing when a defendant raises a new issue at a hearing on a motion for new trial and the State "acquiesce[s]" and allows that issue to be raised, the trial court may consider the issue in its ruling)(*citing Shamim v. State*, 443 S.W.3d 316, 328 (Tex.App.—Houston [1st Dist.] 2014, pet. ref'd)[Internal citations omitted]).

*The Trial Court Properly Considered the Issue*

Here, Hradek's motion for new trial clearly raised the issue of whether the trial court erred by failing to provide an instruction on the statutory definition of "omission," but failed to assert Defense Counsel had been ineffective for failing to request such an instruction. Hradek's motion argued "omission" was an element of both the charged offense and the lesser included offense of which Hradek was convicted.[10] Hradek also pointed out the jury sent a handwritten note to the trial court, requesting the term's definition. Although there is no record of any discussion the trial court may have had with the attorneys on this issue, the trial court sent a written response to the jury advising it to refer to the original charge. The trial court's written response to the jury contains the signatures of both the prosecutor and Contreras approving of the response.

Nevertheless, during the new trial hearing, Hradek's new attorney questioned Contreras extensively regarding his reasons for not requesting an instruction of this nature. Responding, Contreras acknowledged a defendant has a right to have the jury instructed on the statutory definition of an element of an offense, and the term "omission" is in fact a statutorily-defined element of the charges pursed by the State. Contreras blamed his failure to request the "omission"

---

[10] The jury charge properly contained definitions of the remaining elements of both the charged offense and the lesser included offense, including definitions for the terms, intentionally, knowingly, recklessly, and serious bodily injury.

instruction on an oversight, explaining his focus was on the mental elements of the offense, i.e., the question of whether Hradek had acted "intentionally" and "knowingly," which he believed was the "crux" of the case. Contreras further testified he was so certain the jury would acquit Hradek based on lack of evidence supporting the charged mental states, he overlooked the other elements of the offense. Despite extensive questioning of Contreras by Hradek's attorney at the new trial hearing, the State did not object to the line of questioning.

In addition, at the close of the hearing, Hradek's attorney argued, at least indirectly, Contreras was ineffective for failing to request an instruction defining the term "omission:"

> This whole thing about the omission, Your Honor. The omission, she was convicted on an omission. And then to say that the fact that they're asking about an omission and what that means, that that doesn't matter, that's ludicrous. This case was about omissions. The Jury didn't know what that meant. And they weren't instructed the way they should have been. *Part of that was, again, because Counsel did not function the way they should have been. They tried really hard, but they didn't do what they should have been doing . . . . That's not enough, Your Honor, to try really hard.* [Emphasis added].

The prosecutor did not object to Hradek's argument.

Based on the above, the trial court clearly believed this issue had been sufficiently raised and litigated by the parties during the new-trial proceedings, without objection by the State, and therefore included a finding Contreras was ineffective for failing to request an instruction on the definition of "omission." Moreover, the State did not file any objection to the findings in the trial court, and instead raised the issue for the first time in its brief. As such, we conclude the State waived its right to object to the trial court's consideration of this issue, and we therefore review the merits of the trial court's finding on this issue.

*Analysis of the Jury Charge*

In determining whether trial counsel was ineffective for failing to request an instruction on

the statutory definition of "omission," we must first determine whether Hradek was, in fact, entitled to such an instruction, and if so, whether she was prejudiced by her trial court's failure to request the instruction. *See, generally, Okonkwo v. State,* 398 S.W.3d 689, 696-97 (Tex.Crim.App. 2013)(finding trial counsel's failure to request a defensive instruction was not ineffective, where the law did not permit counsel to obtain an instruction under the facts of the case).

As a general matter, we note a defendant is entitled to receive a jury charge "distinctly set[s] forth the law applicable to the case." *Arline v. State*, 721 S.W. 3d 348 (Tex.Crim.App. 1986); *see also* TEX.CODE CRIM.PROC.ANN. art. 36.14 ("[i]n each felony case and in each misdemeanor case tried in a court of record, the judge shall, before the argument begins, deliver to the jury . . . a written charge distinctly setting forth the law applicable to the case."); *see also Vasquez v. State*, 389 S.W.3d 361, 366 (Tex.Crim.App. 2012)("Because the charge is the instrument by which the jury convicts, [it] must contain an accurate statement of the law and must set out all the essential elements of the offense."). This includes the right to receive instructions on all statutory definitions that are central to a jury's resolution of a case, including statutory definitions pertaining to the elements of a charged offense, as well as to any defenses submitted to the jury. *See Villarreal v. State,* 286 S.W.3d 321, 329 (Tex.Crim.App. 2009)(the statutory obligation to instruct the jury on the law "requires that each statutory definition that affects the meaning of an element of the offense must be communicated to the jury."); *Arline*, 721 S.W. 3d at 352-53 (trial court erred by failing to include the statutory definition of "reasonable belief" in the jury charge when instructing the jury on the defendant's claim of self-defense); *see also Nejnaoui v. State,* 44 S.W.3d 111, 119 (Tex.App.—Houston [14th Dist.] 2001, pet. ref'd)("[T]he trial court must define any legal phrase that a jury must necessarily use in properly resolving the issues and provide the statutory definition

30

if available."). Because the term "omission," is a statutorily-defined element of both the offense with which Hradek was charged, and the lesser included offense of which she was convicted, we agree with Hradek she was entitled to receive such an instruction, and Contreras's failure to request the instruction fell below an objective standard of reasonableness.

Courts have consistently held a defendant does not suffer prejudice for failure to provide a statutory definition of an element of a charged offense when the definition is neither "complex nor unusual term," nor when the legal definition of the term in question is "much like the common meaning of the word." *See, e.g., Mosley v. State*, 686 S.W.2d 180, 182 n.2 (Tex.Crim.App. 1985)(finding no prejudice from failing to provide the jury with the statutory definition of the term "bodily injury" where the term was not "a complex or unusual term," and the legal definition of the term was much like the common meaning of the word); *Rohlfing v. State*, 612 S.W.2d 598, 602–03 (Tex.Crim.App. 1981)(finding that defendant was not harmed by the failure to define the term "in the course of committing theft," where the statutory definition of that term "coincides exactly with [its] common meaning"); *see also Nejnaoui*, 44 S.W.3d at 120 (defendant was not harmed by the failure to provide the jury with the statutory definition of the term "conduct" where the statutory definition of that term was "neither complex nor unusual and the definition is much like the common meaning of the word"). Further, when the statutory definition of a term is not given to the jury, a court may presume the jury considered "the commonly understood meaning in its deliberations." *Olveda v. State,* 650 S.W.2d 408, 409 (Tex.Crim.App. 1983)(*referencing Rohlfing*, 612 S.W. 2d at 602-03).

In this case, the statutory definition of the term "omission" is neither complex nor unusual; and it is the common meaning of the word. Section 1.07 of the Texas Penal Code defines an

"omission" simply as the "failure to act." *See* TEX.PENAL CODE ANN. § 1.07(a)(34). Dictionary definitions include the following: "something neglected or left undone," and "apathy toward or neglect of duty." *Omission*, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/omission (last visited January 21, 2020). Moreover, as the State points out, the jury charge expressly instructed the jury "words or phrases not defined [in the charge] have their ordinary meaning," and we must therefore presume the jury applied the commonly-understood meaning of the term in its deliberations.

We also note the prosecutor defined the term "omission" for the jury during voir dire, using virtually identical terminology used in the statutory definition, when she explained an "[o]mission is a failure to do something" when a person has a duty to act. *See, generally, Arline,* 721 S.W.2d at 353 n.8 (although jury argument is not a substitute for a proper jury charge, it can be relevant in determining whether a jury was misled by a misstatement of the law, thus causing harm to a defendant). Additionally, in response to the prosecutor's questioning, Detective Lara explained to the jury an "[o]mission is more or less defined as a duty of a parent or a legal guardian to act and/or render (sic) whenever a child is in need or to prevent injury as such." The jurors were provided with sufficient information to assist them in applying the correct definition of the term "omission" in their deliberations.

We therefore agree with the State the record does not support the trial court's conclusion Defense Counsel's failure to request an instruction defining "omission" prejudiced Hradek's case.

D. Failure to Conduct an Independent Investigation

The trial court found Defense Counsel failed to conduct an independent investigation regarding the statements made by Bobby Soto to law enforcement, or to interview him. The trial

court also found Defense Counsel failed to conduct an independent investigation regarding any material information known by Henry Soto, the only person other than Hradek and Bobby Soto who was present in the residence at the time of Colton's death. The trial court further found Contreras was not credible when he testified as to the reasons he did not conduct an independent investigation of Bobby or Henry Soto. The trial court concluded Defense Counsel did not act pursuant to an objectively reasonable trial strategy in failing to conduct an independent investigation of either Bobby Soto, who had already pleaded guilty to the same offense, or of Henry Soto. Along with other findings, the trial court included this finding of deficiency when it determined there was a reasonable probability the result of the trial would have been different.

On appeal, the State argues the trial court abused its discretion by including this finding of deficient performance in its overall determination of whether Hradek was prejudiced by her counsel's performance. On this narrow point, we agree with the State.

We recognize a defense attorney has a general duty to interview potential witnesses and to make an independent investigation of the facts and circumstances of a defendant's case. *See Butler v. State,* 716 S.W.2d 48, 54 (Tex.Crim.App. 1986). However, when challenging an attorney's failure to call a particular witness, the party must show, had the witness been available to testify, the witness's testimony would have been of some benefit to the defense. *See Ex parte Ramirez,* 280 S.W.3d 848, 853 (Tex.Crim.App. 2007)(*citing King v. State,* 649 S.W.2d 42, 44 (Tex.Crim.App. 1983); *Ex parte White*, 160 S.W.3d 46, 52 (Tex.Crim.App. 2004). In effect, the failure to call witnesses at trial is "irrelevant absent a showing that such witnesses were available[,] and appellant would benefit from their testimony." *Perez v. State*, 310 S.W.3d 890, 894 (Tex.Crim.App. 2010)(quoting *King,* 649 S.W.2d at 44).

33

Here, the State correctly points out Hradek made no offer of proof to demonstrate what Bobby or Henry Soto would have said if they had been interviewed and/or called as witnesses at trial. Without such proof, the record is devoid of evidence demonstrating how Hradek would have benefitted from such information. *See Perez*, 310 S.W.3d at 894; *Ex parte Flores*, 387 S.W.3d 626, 638 (Tex.Crim.App. 2012). Without proof of the benefits of the absent interview or testimony, there is no basis for including this deficiency in the overall determination of prejudice. Accordingly, because the record does not support a conclusion Hradek was prejudiced by Defense Counsel's deficiency in failing to interview Bobby or Henry Soto, or call either as a witness at trial, the trial court should not have included this aspect of Defense Counsel's performance in its overall determination of prejudice.

E.  Failure to Adequately Prepare for Trial

The trial court found Defense Counsel did not adequately prepare for trial, which it determined contributed to the conclusion but for Defense Counsel's actions, there is a reasonable probability the outcome of the trial would have been different. There was evidence presented at the new trial hearing at least one of her attorneys did not know the strategy of the case until the morning of trial, she did not spend any time preparing for the trial until the day before it began, and Defense Counsel did not communicate amongst each other regarding the case until the eve of trial. Maesse also testified she did not know the entire contents of State's Exhibit 51--the 43-minute jail phone call--prior to asking for it to be admitted. The trial court found Defense Counsel's failure to be adequately prepared for trial fell below an objective standard of reasonableness. However, we do not have information in our record indicating how or why the trial court arrived at that conclusion.

34

Some circumstances of an attorney's failure to adequately prepare for trial may warrant a finding of prejudice. *See, e.g., Perrero v. State*, 990 S.W.2d 896, 899 (Tex.App.—El Paso 1999, no pet.)(where defense counsel failed to prepare defendant to testify and defendant inadvertently opened the door to evidence of otherwise inadmissible prior convictions, which prosecutor then used to impeach his credibility on contested issues of fact, prejudice was apparent in the record). However, even where lack of preparedness is apparent in the record, prejudice arising from the lack of preparedness must also be evident in the record. *See Hernandez*, 726 S.W.2d at 58 (although trial counsel's lack of preparedness precluded testimony from two witnesses, it was not apparent from the record such failure meant there was a reasonable probability the result of the trial would have been different).

Without opining on whether Defense Counsel was adequately prepared for trial, we find there is no evidence in the record before us that shows how further preparation by Defense Counsel would have made a difference in the outcome of the case. Additionally, we find no evidence in the record regarding how Defense Counsel's alleged lack of preparation in the case affected the proceedings at all, with the limited exception of Defense Counsel's choice to admit all of State's Exhibit 51 without being sure of its contents. Other than State's Exhibit 51, which we address subsequently, there is no evidence in the record to support the trial court's conclusion Defense Counsel's lack of preparation.

F. Additional Portions of Jail Call Recording

We will next address the additional portions of the recording contained in State's Exhibit 51, a 43-minute phone call between Hradek and her mother, Whitney Hradek, which was recorded from the El Paso County Detention Facility. The additional portions to which we refer are those

portions of the call other than Hradek's mention of her prior cocaine use, which were the only portions of the recording the State intended to have admitted. The remaining portion of State's Exhibit 51 would not have been admitted if not for the insistence of Hradek's counsel the recording be admitted in its entirety. After the new trial hearing, the trial court made a series of factual findings regarding State's Exhibit 51:

(1) that the defense requested that the entire 43-minute call be admitted, rather than the limited excerpts requested by the State in which Hradek admitted to the use of cocaine;[11]

(2) that absent Defense Counsels' request, no other portions of the call would have been admitted;

(3) that Defense Counsel Maese [sic] requested that the 43-minute-call be admitted despite never having listened to the entire recording, and while being unfamiliar with its contents;

(4) that Defense Counsel Contreras was not credible when he testified both, that he had listened to it, and that he only heard a 'snippet' of it;

(5) that Defense Counsel Contreras was not credible or consistent when he testified to the reasons why he advised co-counsel Maese [sic] to request that the entire call be admitted;

(6) that Defense Counsel failed to provide any credible reasonable trial strategy as to why they requested that the entire phone call be admitted;

(7) that Defense Counsel testified he realized 'the whole thing' was bad.

Based on these findings, the court made the following conclusions of law:

(1) Defense Counsel did not act pursuant to an objectively reasonable trial strategy in requesting that the call be admitted;

---

[11] As to the limited excerpt, the parties dispute the meaning of Hradek's statement to her mother the only thing she did wrong was "to do cocaine while the baby was alive," which she knew was a mistake. Hradek then tells her mother the baby was not in the car seat and was next to her on the bed the whole night. The State argues Hradek's comment equated to an admission of using cocaine "the night Colton died." In contrast, Hradek asserts she did not specify the timing of her use of cocaine, and more broadly mentioned the only thing she did wrong was "use cocaine when Colton was alive." At trial, the State argued it was not prosecuting Hradek for being a bad person—although she admitted to using cocaine the night Colton died—but rather it was prosecuting her for leaving her infant in an unsafe position for hours. The State relies on *Manning v. State*, 114 S.W.3d 922, 924-28 (Tex.Crim.App. 2003), a case holding evidence of defendant's cocaine use at some point prior to the offense was relevant and probative on the issue of defendant's state of mind and recklessness, even though there was no evidence showing the defendant was still under the influence of the cocaine at the time of the offense, and such evidence was not unfairly prejudicial.

(2) the probative value of the additional portions of State's Exhibit 51 admitted by Defense Counsel were substantially outweighed by the unfair prejudice to the defense and were highly inflammatory;

(3) As for the prejudicial impact, the court found that the admission of the additional portions of the recording contributed to the court's final determination that there was a reasonable probability that the result of the proceeding would have been different.

On appeal, the State states the playing of the entire call and its admission into evidence "admittedly constitute[ed] egregiously deficient performance." Accordingly, the State does not contest any of the findings supporting the court's conclusion that trial counsel provided deficient representation in requesting admission of additional portions of the call beyond the snippets that had been ruled admissible. Instead, the State challenges the trial court's conclusion that the call's admission in its entirety constituted prejudice under *Strickland*. The State principally contends that the portions at issue were minimally prejudicial, at most, or otherwise cumulative of other admissible evidence, such that the trial court erred in concluding that Hradek had met the prejudice prong of *Strickland*. In opposition, Hradek asserts that the multiple portions of the call that were admitted due to her counsel's egregiously deficient representation were "extremely prejudicial." We agree with the State that the record does not support a finding that the excerpts at issue, whether considered alone or in combination with the other complained-of acts of Defense Counsel, prejudiced Hradek to satisfy the second prong of *Strickland*, and find the trial court abused its discretion in ruling otherwise.

As *Strickland* outlines, there are some types of Sixth Amendment cases where prejudice is presumed, such as actual or constructive denial of the assistance of counsel completely, or instances of state interference with a defense counsel's assistance to his or her client. *Strickland*, 466 U.S. at 692. Additionally, in cases involving actual conflict of interest, prejudice is presumed

37

because of a counsel's breach of "the most basic of counsel's duties," the duty of loyalty. *See id.* (*citing Cuyler v. Sullivan*, 446 U.S. 335, 345-350 (1980)). However, absent one of these extreme categories of violations, ineffective assistance of counsel claims alleging deficient attorney performance require a defendant to "affirmatively prove prejudice." *See id.*

Cases involving alleged ineffective assistance cannot be categorized in some manner where certain errors are more likely than others to cause the requisite harm. *See Strickland*, 466 U.S. at 693.

> Attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial. They cannot be classified according to likelihood of causing prejudice. Nor can they be defined with sufficient precision to inform defense attorneys correctly just what conduct to avoid. . . . Even if a defendant shows that particular errors of counsel were unreasonable, therefore, the defendant must show that they actually had an adverse effect on the defense.
>
> It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding. Virtually every act or omission of counsel would meet that test, and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding. [Internal citation omitted]

*Id.* Accordingly, it is imperative that claims of ineffective assistance of counsel be apparent in the record. *Thompson v. State*, 9 S.W.3d 808, 812 (Tex.Crim.App. 1999).

Where trial counsel erroneously allows otherwise inadmissible evidence of prior "bad acts" committed by a defendant to be admitted, some courts, including this one, have found that the admission of such evidence in those particular circumstances prejudiced the defendant, as it impacted on his credibility in front of the jury. *See, e.g., Ramirez v. State*, 873 S.W.2d 757, 762–63 (Tex.App.—El Paso 1994, pet. ref'd)(holding that defendant in a murder case was entitled to a new trial due to trial counsel's deficient performance, where trial counsel failed to object to the admission of an otherwise-inadmissible prior conviction, and the State used the prior conviction

to not only argue the defendant's propensity to kill, but to attack the defendant's credibility, which was a key factor in the case).[12] Prejudice may occur when the inadmissible evidence impacted the defendant or another witnesses' credibility in a case that primarily turned on the jury's credibility determinations. *Menchaca*, 854 S.W.2d at 133. As previously discussed herein, in cases involving the erroneous admission of prejudicial evidence, an appellate court must examine trial counsel's errors not as isolated incidents, but in the context of the overall record. *See Ex parte Menchaca,* 854 S.W.2d 128, 133 (Tex.Crim.App. 1993). If trial counsel performed deficiently by eliciting or failing to object to inadmissible evidence, a relevant consideration in determining if the defendant was prejudiced by such evidence is whether that evidence permeated the defendant's trial. *Id.* at 133; *Ex parte Skelton,* 434 S.W.3d 709, 730–33 (Tex.App.—San Antonio 2014, pet. ref'd).

To address the parties' point of contention—whether the trial court erred in concluding that additional portions of the call contained evidence that irreparably prejudiced Hradek's case—we will examine the conversation's contents in two phases. First, we will look at the comments in the call that address Hradek's credibility: the comment regarding her "dancing;" comments about her anger and mental health issues and questioning her veracity; Hradek expressing regret over Colton's birth; and her use of profanity. Second, we will examine the comments regarding her actual guilt or innocence, those instances in which her mother questioned her involvement in

---

[12] *See also Robertson v. State*, 214 S.W.3d 665, 667–68 (Tex.App.—Waco 2007, no pet.)(where trial counsel opened the door to allowing in evidence of a prior conviction, and the State used the prior conviction to attack the defendant's credibility, which was a key issue in the case, the defendant was prejudiced by trial counsel's deficient performance in allowing in the evidence); *see also Elliott v. State*, No. 13-03-083-CR, 2004 WL 5050888, at *3 (Tex.App.—Corpus Christi Aug. 26, 2004, no pet.)(not designated for publication)(trial counsel harmed defendant's case by admitting the defendant's two previous convictions to the jury, by diminishing the defendant's credibility and encouraging the jury to convict because of appellant's past pattern of behavior and not based on the facts of the case); *Davis v. State,* 413 S.W.3d 816, 827, 837–38 (Tex.App.—Austin 2013, pet. ref'd)(defendant suffered prejudice when the evidence of guilt was largely circumstantial, the extraneous offense evidence was a significant portion and central theme of the case against him, and the State reinforced the harmful effect of this evidence during closing argument).

Colton's death, and Hradek's consideration of pleading guilty in exchange for an agreed punishment term. We will address the implications of each category of comments in turn.

*Comments Generally Regarding Hradek's Credibility*

### 1. Previous Work as a Dancer

Hradek tells her mother not to worry because Hradek is not going to "go out and start dancing again." There is no further mention of dancing, stripping, Foxy's, or any other item related to Hradek's former employment as an exotic dancer in the State's Exhibit 51.

The trial court previously refused to allow admission of evidence of Hradek's former profession due to its lack of probative value. However, an error in the redaction of State's Exhibit 35, Hradek's recorded statement after her arrest, inadvertently allowed the jury to hear about her employment at Foxy's at the time of Colton's death.[13]

### 2. Failing to Appreciate the Serious Nature of the Case

Whitney Hradek makes repeated references to wishing Hradek would take the circumstances of her case seriously. She likewise commented that the difference between Hradek's case and another inmate who was released on a personal recognizance bond pending trial was that the other inmate was charged with *attempted* murder and that in Hradek's case, "[her] baby died." Whitney Hradek also implied that what happened to Colton was not fair in response to Hradek saying that what she was experiencing was not fair.

### 3. Discussing Hradek's Mental Health and Veracity

During the call, Whitney Hradek tells her daughter that she was going to recommend to

---

[13] Defense Counsel's failure to catch the redaction error comprises part of her claim they failed to conduct an independent investigation. Since the alleged failure regards the inadvertent admission of otherwise inadmissible evidence, we will address here whether such failure constituted prejudice under *Strickland*.

Hradek's attorney that a doctor give her a mental health evaluation and alludes to Hradek experiencing issues with anger. A short time before this exchange, Whitney Hradek urges Hradek to be truthful when discussing the case with her attorneys even if it is potentially negative for Bobby or Henry Soto. Hradek replies that she does not know anything more than what she has already told the police. Her mother states sometimes people confess to things they felt they could tell anyone else, and she hoped that was not the case for Hradek. Hradek reiterates she did nothing wrong and should not be in jail.

### 4. Regret over Colton's Birth

At one point during the call, Hradek stated her present situation was making her wish her son had not been born or she had never gotten pregnant. Her mother rebukes her, telling her never to think that way. Their discussion continues, and Hradek asks how she could feel any other way, given the circumstances. Whitney Hradek explains to her daughter that she must consider how people on the outside feel because they are angry over Colton's death.

### 5. Use of Profanity

Hradek makes several statements during the call that contain profanity. The most egregious instances of profanity are when her mother mentions the medical examiner's findings on Colton's cause of death, to which Hradek says, "Well, fuck the medical examiner. Fuck him, because he's wrong." She also states she does not believe the State "ha[s] shit" on her because she did not do anything wrong. At one point, she states she believes the only reason she is in jail is because she "fucking did coke." There are a few other instances of profanity in other parts of the call, but the aforementioned occurrences are the most significant.

*Analysis of Comments Regarding Hradek's Credibility*

Each of the foregoing instances contributes to what Hradek asserts are an erosion of her credibility with the jury due to the "highly inflammatory" nature of the statements. Hradek claims that her mention of "dancing" destroyed any meaningful connection between herself and the jury and irreparably harmed her credibility as a mother. She also argues if evidence her own mother questions her willingness to be truthful, then a jury would certainly question her truthfulness.

Hradek's statement she regrets Colton was ever born is not helpful. She contends the effect of the jury hearing that sentiment is it portrayed her as a selfish person who did not care about her son. However, other portions of the call put her statement into perspective. Immediately following the above exchange, Hradek exclaims through tears, "You think everyone else feels bad [about Colton's death], he's my son." At the end of the call, again in tears, she expresses that she "just want[s] Colton back." It is clear her feelings of regret, when taken into context with other portions of the call, are not at Colton's birth or his life, but at losing him.

Furthermore, Hradek argues these statements imply a culpable mental state and undermined her credibility by allowing the jury to believe she did not want her baby. However, the jury's verdict indicates the opposite, considering she was convicted of the lesser-included offense of reckless injury to a child, and thus lacked the requisite mental state for intentional or knowing injury to a child.

Hradek claims the profanity is another example of evidence that undermined her credibility with the jury due to its offensive nature. The State argues the additional instances of profanity are merely cumulative of the instance of profanity the trial court agreed could be admitted from the call regarding Hradek's cocaine use. However, Hradek argues the portion of the recording referencing cocaine as well as profanity was not the portion of the call the State sought to introduce.

42

The record is unclear to us whether the State sought to introduce the portion of the call that contained that one instance of profanity in its inclusion of the portion discussing the cocaine use.

We are reminded that *Strickland* requires we examine the totality of the circumstances and evidence presented at the trial to determine if there is a reasonable probability—but for counsel's deficient performance—the result of the proceeding would have been different. *Ex parte Martinez*, 330 S.W.3d 891, 900–01 (Tex.Crim.App. 2011). It is not sufficient for an appellant to show "that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 901 (citing *Strickland*, 466 U.S. at 693). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. "A verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Id.* at 696.

In each of the foregoing instances, no evidence was presented in the new trial hearing regarding whether or how the foregoing statements prejudiced Hradek at trial. The evidence presented at the new trial hearing involved speculative testimony about how these statements *could* have prejudiced Hradek, and in general whether it would be preferable or unfavorable for a jury to hear that type of commentary. For example, Contreras testified he would not want a client cursing in front of a jury because, "it gives the jury a bad impression" and could lead to a conviction. However, Hradek did not produce evidence to show *actual* prejudice resulting from admitting these portions of the call into evidence, which she is required to do under *Strickland*. *See Thompson*, 9 S.W.3d at 812; *see also Williams*, 970 S.W.2d at 184. Absent such a showing, the record does not support a finding this evidence undermined the reliability of the verdict.

Furthermore, Hradek's conviction for the lesser-included offense of reckless injury to a

43

child is supported by the evidence even if these portions of the call had not been admitted. The admissible evidence in the case regarding safe infant-sleep practices and Hradek's decision to stop using the sleep apnea machine with Colton supports the jury's verdict, and more importantly, the defense's theory of the case coupled with Hradek's own admissions—that Colton died accidentally while sleeping in bed between his parents. If the jury believed Hradek's ability or choices as a mother were impacted by virtue of being a dancer at a gentleman's club, or her propensity to use foul language, or any other matter, it is not apparent from the record.

*Comments Relating to Hradek's Guilt or Innocence*

### 1.  <u>Implying Hradek was Involved in Colton's Death</u>

Whitney Hradek states she does not believe Hradek did anything intentional to hurt Colton. She also tells her daughter the police and the State must get to the bottom of how Colton died and questions how Hradek can be sure Colton did not die in the car seat as the medical examiner opined. In response, Hradek tells her mother she is a light sleeper, and she would have felt someone move Colton away from her side that night. Hradek maintains the medical examiner's version of how Colton died is incorrect and he always slept in bed with her.

### 2.  <u>Considering Pleading Guilty</u>

Hradek tells her mother she is considering pleading guilty because she is afraid the State could charge her with higher level offenses. Her mother discourages her from doing so and tells her to trust the process, to which she responds, "What if [the process] doesn't work?" The State argues this portion of the call had a minimal effect in prejudicing the jury, if any. Hradek disagrees, arguing it implies to the jury that she is guilty. The State suggests this statement is akin to evidence regarding plea offers.

*Analysis of Comments Relating to Hradek's Guilt or Innocence*

There is no evidence in the entire record before us that Whitney Hradek's comments regarding her daughter's role in Colton's death had any injurious effect on the jury, let alone constituted prejudice. The record for both proceedings is silent on what effect, if any, such comments had in contributing to the jury's finding Hradek was reckless by omission in causing Colton's death.

Plea offers are generally inadmissible under Rule 403 because any probative value offered by their admission is substantially outweighed by the likelihood that it will unfairly prejudice the defendant and/or mislead the jury. *Prystash v. State*, 3 S.W.3d 522, 527-28 (Tex.Crim.App. 1999). We agree there are circumstances where admitting evidence of a plea offer or of a defendant's willingness to accept or consider accepting a plea, or pleading guilty to a charged offense, could irreparably prejudice the jury and undermine the verdict. There are at least one of our sister courts who feels similarly, specifically as it pertains to a defendant pleading guilty. *See McDonald v. State*, No. 03-09-00532-CR, 2010 WL 4260989, at *2 (Tex.App.—Austin October 28, 2010, no pet.)(mem. op., not designated for publication)(implying evidence a defendant considered pleading guilty could deprive an appellant of due process, although such facts were not present in that case).

Our reading of the record does not support such a finding for two reasons. First, Hradek maintains her innocence throughout the call, to the point where she expresses incredulity at being in jail at all. It is patently clear she does not believe she did anything to justify her charged offenses. Second, it is important to consider the charge pending against Hradek was **intentional or knowing** injury to a child by omission; however, she was convicted of the lesser-included **reckless** injury to a child by omission. Thus, the erroneous admission of evidence tending to show Hradek was

45

guilty of the charged offense, or worse—either of which would have been an offense greater than that she was convicted of—clearly did not prejudice the jury by leading them to believe she was guilty of **intentional or knowing** injury to a child by omission.

*Final Analysis of Phone Call Contents*

Hradek's trial lasted five days, three of which encompassed each side putting on evidence. There were fifteen witnesses called by the State and two called by the defense, consisting of approximately twenty hours of testimony. Of the State's evidence, the phone call at issue comprised approximately 43 minutes of those twenty hours. As our recitation of the evidence demonstrates the jail recording did not always place Hradek in the most flattering light, but given she did not testify, she was able to protest her innocence. Defendant's statements are often a mixed bag, in which they can outline their defense without any cross-examination, but the jury sees an unvarnished version of them. It is equally true the call evidence could have negligibly prejudiced Hradek while bolstering her claim Colton was not left in the carrier, while supporting her defense she was only guilty of reckless omission.

Moreover, the State made no mention of any portion of the complained-of phone call in its closing arguments, with the limited exception of Hradek's admitted cocaine use, which was previously ruled admissible. Instead, the State focused on the fact Hradek gave away the sleep apnea monitor against medical advice and knowingly put Colton in an unsafe sleeping position despite his sleep apnea and high risk for SIDS. The State also focused on the fact Colton did not die lying flat in his crib or on a bed, but even if he had been sleeping in the bed, it would have been unsafe, a fact of which Hradek was aware. The State also acknowledged it was not required to prove Colton died in a car seat, and even if the jury did not agree with their theory, the medical

testimony Colton died of positional asphyxiation was uncontroverted. In the final moments of its

closing, the State emphasized,

> This Defendant knew that the most dangerous time for Colton was when he was asleep because of his sleep apnea. She intentionally and knowingly gave away a monitor, and she intentionally and knowingly took cocaine when Colton was asleep or she knew he was going to be going to sleep. And then she knowingly put him in an unsafe sleep position.

Perhaps most notable, is Hradek's theory of the case supports the jury's verdict. In its

closing argument, Defense Counsel made the following statements:

> [H]e was premature and in a bed, high candidate, or a very likely candidate, for SIDS[.][W]e all know, we all know, the best place for a baby is the crib. Everybody knows that. In the crib, with no pillows, no stuffed animals, no bumper . . . no blankets. Even though we all know that to be the case, especially nursing moms, you take the baby in bed to nurse and you fall asleep and just crash out. And I guarantee it's happened to more than half of you on this panel. And we're blessed that our baby didn't die. But [Hradek's] did.

> [O]ne thing that hasn't been inconsistent is Ms. Hradek's contention that she put the baby in bed.

> Then I asked [Dr. Canales, Colton's pediatrician] about SIDS. And he said, 'Yep, yep, yep, he was a prime candidate for SIDS.' He was male. He was under three months old. He -- it was in October, which, he said it happens more often in cold weather, right? And he had recently been fed. Recently been fed. A prime candidate for SIDS. And I asked him specifically -- that was the last question I asked him – 'It was the perfect storm for SIDS, correct?' And he said yes. Their witness said yes.

Hradek also acknowledged in her recorded video statement she knew Colton was high risk for

SIDS. Further, she was afraid she would get into trouble for having him sleep in bed with her when

she knew it was not safe.

It appears in arriving at its conclusion regarding prejudice, the trial court examined all the

instances of alleged misconduct by Defense Counsel, including admission of all of State's Exhibit

51; because those instances are numerous and some egregious, the only logical result could be

47

Hradek was prejudiced. However, the record at trial and the new trial hearing is completely void of any tangible evidence Hradek was required to provide to show prejudice pursuant to *Strickland*.

The question is there a reasonable probability the introduction of jail recorded call sufficiently undermines our confidence in the jury's verdict? The record is rife with evidence, properly admitted at trial, including the defense's own theory of accidental death, which supports the jury's verdict of reckless injury to a child. We therefore do not believe this record supports the trial court's determination that but for her attorney's erroneous admission of this piece of evidence into the case, even in combination with the other complained-of offenses, there is a reasonable probability the outcome of her case would have been different. Without such evidence, the trial court improperly granted a new trial based on ineffective assistance of counsel.

We sustain the State's first issue. We do not reach the merits of the State's remaining issues because it is not dispositive of this appeal. *See* TEX.R.APP.P. 47.1.

### III. CONCLUSION

We find the record at trial supports the verdict convicting Hradek of the lesser-included offense of her charged offense, which is recklessly injuring a child by omission. We further find the record does support Hradek's contention that but-for the errors of counsel, considering the totality of the record, the outcome would have been different. Therefore, the requisite second prong of *Strickland*'s test for claims of ineffective assistance of counsel has not been met.

Having sustained the State's first issue, we reverse the trial court's decision and reinstate the jury's verdict and the trial court's judgment.


August 24, 2022

YVONNE T. RODRIGUEZ, Chief Justice

48

Before Rodriguez, C.J., Palafox, J., and McClure, Senior Judge
McClure, Senior Judge (Sitting by Assignment)
Palafox, J., Dissenting

(Do Not Publish)